867 A.2d 1133

STEWART ZIVE, PLAINTIFF–RESPONDENT, v. STANLEY ROBERTS, INC., DEFENDANT–APPELLANT.

Argued October 13, 2004—Decided February 24, 2005.

438

*Carl A. Salisbury,* argued the cause for appellant (*Killian & Salisbury,* attorneys; *Mr. Salisbury* and *Steven R. Weinstein,* on the briefs).

*Neil H. Deutsch,* argued the cause for respondent (*Deutsch Resnick* and *Pashman Stein,* attorneys; *Mr. Deutsch* and *Jonathan I. Nirenberg,* on the briefs).

*Richard M. Schall,* argued the cause for amicus curiae National Employment Lawyers Association/New Jersey (*Schall & Barasch,* attorneys).

*Craig H. Livingston,* submitted a brief on behalf of amici curiae New Jersey Advisory Council on Safety and Health, New Jersey Council of the International Association of Machinists and Aerospace Workers, AFL–CIO (*Ball Livingston,* attorneys).

*James R. Michael,* Deputy Attorney General, submitted a brief on behalf of amicus curiae New Jersey Division on Civil Rights (*Peter C. Harvey,* Attorney General of New Jersey, attorney; *Jeffrey Burstein,* Assistant Attorney General, of counsel).

Justice LONG delivered the opinion of the Court.

The appeal provides us with an opportunity to clarify an issue that has dogged courts across the nation: on a Law Against Discrimination (LAD) termination claim, what is the plaintiff's evidentiary burden that will satisfy the second prong of the *prima facie* case under the *McDonnell Douglas*[1] burden-shifting scheme. We hold that so long as the employee shows that he has been performing in the position from which he was terminated, the second prong is fulfilled. We further hold that the quality of the employee's performance does not come into play on the plaintiff's *prima facie* case.

I.

Because the case comes to us on Stanley Roberts's appeal from the denial of its motion for a directed verdict, we accept as true all the evidence supporting Zive and accord him all legitimate inferences. *R.* 4:40–1; *Verdicchio v. Ricca,* 179 *N.J.* 1, 30, 843 *A.*2d 1042, 1060–61 (2004)(noting that both *Rule* 4:40–1 and *Rule* 4:37–2(b) are governed by same standard: "[I]f, accepting as true all the evidence which supports the position of the party defending

---

[1] *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.*2d 668 (1973).

against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied" (citations omitted)).

So viewed, the following are the facts of the case: Stanley Roberts, an importer of flatware for retail sale, hired Zive in May 1991 to head its new "Homeworld" division. Prior to working for Stanley Roberts, Zive had substantial experience as a sales executive.

Between 1991 and 1994, Homeworld's sales steadily increased from $905,000 to $2 million. In 1995, sales declined for the first time to $1.7 million and in 1996, to $1.3 million. To help meet sales goals, Zive hired an assistant, Tom Garda, and Homeworld's sales increased to $1.8 million in 1997.

Despite the fact that Homeworld had never earned more than $2 million, Edward Pomeranz, the president of Stanley Roberts, told Zive that Homeworld needed $2.5 million in yearly sales to justify keeping the division open. Zive thought that Homeworld would earn that amount in 1998 and agreed to meet the goal. In September 1998, Garda was asked to head another division and reduced the time he spent with Homeworld. By October of 1998, it was apparent that Homeworld would not achieve the sales goal; instead, it reached only $1.5 million. Those numbers were not explained; however, sales for the entire company declined substantially in 1998.

Although Zive admittedly was unable to reach the $2.5 million sales goal imposed by Pomeranz, and there was discussion of possibly closing Homeworld, neither Pomeranz nor any other Stanley Roberts official ever suggested, even obliquely, that Zive was in danger of losing his job. The only discussion of his employment occurred when Pomeranz mentioned a potential move from a salaried to a commissioned position.

Zive suffered a debilitating stroke on December 3, 1998 that paralyzed the left side of his body. According to Zive, Pomeranz

visited him in the hospital and told him to "hurry up and get better and get back to work" and asked Zive to attend the Chicago Housewares show in January 1999. After the stroke, he worked from home, talked to Garda and to his secretary by phone, and reviewed business reports.

The last time Pomeranz actually saw Zive before the firing, which took place by telephone, the effects of the stroke were still obvious. Zive was limping, needed a cane, and had to speak slowly in order to be understood. On March 8, 1999, after rehabilitation, Zive called Harold Pomeranz, the Chairman of the Board of Stanley Roberts, to state that he was ready to return to work. He was told that his "services would no longer be required" and was offered a severance package of $20,000 plus medical insurance for a year. Zive went to the office on March 15, 1999 but was unsuccessful in saving his salaried position.

Stanley Roberts issued a memorandum on March 22, 1999, advising Homeworld Sales Representatives that Zive was no longer with the company and instructing them to "[c]ontinue to direct all inquiries [regarding Homeworld] to Tom Garda and Tina Patterson, *as we are going to continue with the division.*" (emphasis added). According to Zive, Stanley Roberts never closed Homeworld and subsequently replaced Garda with another employee, Mel Rudy, who performed essentially all of Zive's former job functions.

On June 24, 1999, Zive brought this action, claiming discriminatory discharge in violation of the LAD. At trial, Stanley Roberts moved for a directed verdict, claiming that Zive had not presented a *prima facie* case of discrimination because he failed to prove that he had met the "legitimate expectations of his employer" under the test formulated in *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 597, 538 *A.*2d 794, 805–06 (1988), to adapt *McDonnell Douglas* to a termination case. The trial judge denied that motion, and the case proceeded to the jury. The trial judge also denied Stanley Roberts's request that the jury be charged on the elements of the *prima facie* case. The jury found that Stanley

Roberts terminated Zive after his stroke, used the stroke or its effects as a determinative factor in the firing, and awarded Zive $225,000 in compensatory damages and $75,000 for pain and suffering. Stanley Roberts appealed.

The Appellate Division affirmed, holding that a discharged employee in a LAD case need not show that his performance met his employer's subjective legitimate expectations but need only show that he was "objectively qualified" for the position. The court equated objective qualification with basic performance, holding that because Zive had worked for Stanley Roberts for eight years and had been "actively engaged in the management and administration of Homeworld," there was "more than a scintilla of evidence that he was objectively qualified for the position he held."

In ruling, the Appellate Division refused to accept the $2.5 million sales target as an "objective" measure of Zive's performance because it involved "external and internal, tangible and intangible factors," such as the market for the product, the market share and reputation of the company, the economy, the competition, and the commitment of the company to spend time and money to meet the target. Rather than objectively measuring Zive's performance, the Appellate Division viewed the $2.5 million as a subjective goal established to determine whether Homeworld was "worthy as a permanent extension of defendant's established lines of business."

Finally, the Appellate Division approved the trial judge's decision not to instruct the jury with regard to the burden-shifting analysis of *McDonnell Douglas* and to pose only the ultimate issue of whether Zive proved an act of discrimination by a preponderance of the evidence.

We granted Stanley Roberts's petition for certification. *Zive v. Stanley Roberts, Inc.,* 179 *N.J.* 373, 845 *A.*2d 1255 (2004). We also granted *amicus curiae* status to the New Jersey Division on Civil Rights, the National Employment Lawyers Association/New Jersey, the New Jersey Advisory Council on Safety and Health, and

the New Jersey Council of the International Association of Machinists and Aerospace Workers, AFL–CIO.

## II.

On appeal, Stanley Roberts argues that it was entitled to a directed verdict because Zive did not satisfy the second prong of the *prima facie* burden under the LAD insofar as he failed to prove "that he was performing his job at a level that met his employer's legitimate expectations." *Clowes, supra,* 109 *N.J.* at 597, 538 *A.*2d at 805 (quoting *Loeb v. Textron, Inc.,* 600 *F.*2d 1003, 1014 (1st Cir.1979)). Stanley Roberts also contends that the Appellate Division incorrectly used the pre-*Clowes* "qualified for the position" standard, which effectively eliminated Zive's *prima facie* burden. In addition, Stanley Roberts argues that the trial judge improperly refused to instruct the jury on Zive's *prima facie* burden. Finally, Stanley Roberts contends that Zive did not satisfy the fourth prong of the *prima facie* burden because no one replaced him as the head of Homeworld; the position was eliminated entirely.

Zive counters that he needed only to show that he was "objectively qualified" to satisfy the second prong of his *prima facie* case, and that he did so by proving that he held the position as head of Homeworld for an extended period of time. He further argues that no trial error, warranting our intervention, occurred.

The *amici* argue that the second prong analysis is an objective one that is to be judged without resort to an employer's subjective views. They contend that because plaintiff's burden on the *prima facie* case is intended to be modest, so long as he can show that he was qualified to hold his job, for example, by establishing that he actually performed it for a period of time, the second prong is satisfied.

## III.

Enacted in 1945, the New Jersey LAD guarantees that all citizens be afforded the civil rights promised by the State

Constitution. *Viscik v. Fowler Equip. Co.*, 173 *N.J.* 1, 12, 800 *A.*2d 826, 832 (2002). The "overarching goal of the [LAD] is nothing less than the eradication 'of the cancer of discrimination.'" *Fuchilla v. Layman*, 109 *N.J.* 319, 334, 537 *A.*2d 652, 660 (quoting *Jackson v. Concord Co.*, 54 *N.J.* 113, 124, 253 *A.*2d 793, 799 (1969)), *cert. denied*, 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988). Specifically, the purpose of the LAD is "to secure to handicapped individuals full and equal access to society, bounded only by the actual physical limits that they cannot surmount." *Andersen v. Exxon Co., U.S.A.*, 89 *N.J.* 483, 495, 446 *A.*2d 486, 492 (1982). Because of its remedial purpose, the LAD should be construed liberally to achieve its aims. *Franek v. Tomahawk Lake Resort*, 333 *N.J.Super.* 206, 217, 754 *A.*2d 1237, 1243 (App. Div.2000).

■ The LAD prevents only *unlawful* discrimination against disabled individuals; it does not prevent the termination or change of employment of any person who "is unable to perform adequately the duties of employment, nor [does it] preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards." *Viscik, supra*, 173 *N.J.* at 13, 800 *A.*2d at 833 (quoting *N.J.S.A.* 10:5–2.1). Put another way, the LAD acknowledges the authority of employers to manage their own businesses. *Ibid.*

■ What makes an employer's personnel action unlawful is the employer's intent. *Marzano v. Computer Sci. Corp.*, 91 *F.*3d 497, 507 (3d Cir.1996). Employment discrimination cases thus suffer from the difficulty that inheres in all state-of-mind cases—the difficulty of proving discriminatory intent through direct evidence, which is often unavailable. *Id.* at 499. "All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult.... There will seldom be 'eyewitness' testimony as to the employer's mental processes." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 *U.S.* 711, 716, 103 *S.Ct.* 1478, 1482, 75 *L.Ed.*2d 403, 411 (1983). To be sure, there are

occasionally cases involving the "proverbial 'smoking gun.' " *Marzano, supra,* 91 *F*.3d at 507. However,

> our legal scheme against discrimination would be little more than a toothless tiger if the courts were to require such direct evidence of discrimination. As we explained in *Chipollini* [*v. Spencer Gifts, Inc.,* 814 *F*.2d 893, 899 (3d Cir.1987)], "we do not require direct proof of . . . discrimination because it is often unavailable or difficult to find. . . . 'Even an employer who knowingly discriminates on the basis of [protected status] may leave no written records revealing the forbidden motive and may communicate it orally to no one.' " 814 *F*.2d at 899 (citing *LaMontagne v. American Convenience Products, Inc.,* 750 *F*.2d 1405, 1410 (7th Cir.1984)).
>
> [*Marzano, supra,* 91 *F*.3d at 507.]

To address the difficulty of proving discriminatory intent, New Jersey has adopted the procedural burden-shifting methodology articulated in *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.*2d 668 (1973); *Viscik, supra,* 173 *N.J.* at 13–14, 800 *A.*2d at 833; *Clowes, supra,* 109 *N.J.* at 595, 538 *A.*2d at 804.

*McDonnell Douglas* enables a plaintiff to make his or her case through circumstantial evidence. *Marzano, supra,* 91 *F*.3d at 502–03. Under *McDonnell Douglas,* a plaintiff in a failure to hire case must first prove a *prima facie* case of discrimination; to do so, a plaintiff must prove the following: that plaintiff (1) belongs to a protected class, (2) applied and was qualified for a position for which the employer was seeking applicants, (3) was rejected despite adequate qualifications, and (4) after rejection the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications. *Andersen, supra,* 89 *N.J.* at 492, 446 *A.*2d at 490.

The evidentiary burden at the *prima facie* stage is "rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination *could* be a reason for the employer's action." *Marzano, supra,* 91 *F*.3d at 508; *see also Texas Dep't of Cmty. Affairs v. Burdine,* 450 *U.S.* 248, 253, 101 *S.Ct.* 1089, 1094, 67 *L.Ed.*2d 207, 215 (1981) (describing burden of establishing a *prima facie* case as "not onerous"); *Torre v. Casio, Inc.,* 42 *F*.3d 825, 829 (3d Cir.1994) (describing *prima facie* case as "relatively simple") (quoting

*McKenna v. Pac. Rail Serv.*, 32 *F*.3d 820, 825 (3d Cir.1994));
*Massarsky v. Gen. Motors Corp.*, 706 *F*.2d 111, 118 (3d Cir.)
(describing *prima facie* case as "easily made out") (*cert. denied*,
464 *U.S.* 937, 104 *S.Ct.* 348, 78 *L.Ed.*2d 314 (1983)); *Peper v.
Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 81, 389 *A*.2d 465, 478
(1978) (writing "the standard for presenting a *[p]rima facie* case
cannot be too great lest rampant discrimination go unchecked.").

That consistent reaffirmance of the plaintiff's slight evidentiary
burden acknowledges that requiring greater proof would generally
prevent a plaintiff from accessing the tools, i.e., evidence of the
employer's motivation, necessary to even begin to assemble a case.
Such a result would not be consistent with "the complex evidentia-
ry edifice constructed by the Supreme Court, and [would] impose
on plaintiff the very burden that *McDonnell Douglas* sought to
avoid—that of uncovering a smoking gun." *Marzano, supra,* 91
*F*.3d at 510.

Procedurally, courts have recognized that the *prima facie* case
is to be evaluated solely on the basis of the evidence presented by
the plaintiff, irrespective of defendants' efforts to dispute that
evidence. *Cline v. Catholic Diocese of Toledo*, 206 *F*.3d 651, 661
(6th Cir.2000); *see also id.* at 663 n. 7 (citing *Freeman v. Package
Mach. Co.*, 865 *F*.2d 1331, 1335–36 (1st Cir.1988) (looking only at
plaintiff's evidence that he was qualified for *prima facie* purposes
and considering defendant's contrary evidence at rebuttal stage);
*Siegel v. Alpha Wire Corp.*, 894 *F*.2d 50, 54 (3d Cir.)(stating
defendant's arguments rebutting plaintiff's *prima facie* case be-
long in later stages of *McDonnell Douglas* and relying on plain-
tiff's evidence alone to find *prima facie* case satisfied)(*cert. denied*,
496 *U.S.* 906, 110 *S.Ct.* 2588, 110 *L.Ed.*2d 269 (1990)); *Yarbrough
v. Tower Oldsmobile, Inc.*, 789 *F*.2d 508, 512 (7th Cir.1986) (stating
defendant's argument that plaintiff refused job assignment and
thus failed to meet its legitimate expectations was not "appropri-
ately brought as a challenge to the sufficiency of [the] *prima facie*
case," and considering only plaintiff's testimony to find *prima
facie* case)). Obviously, where as here, the employer moves for a

directed verdict based on the employee's failure to establish a *prima facie* case, the employee's evidence is also entitled to all legitimate inferences that derive therefrom. *R.* 4:37–2(b).

One court aptly described the *prima facie* burden as giving plaintiff

the right, as in a poker game, to require the employer to show its hand—that is, to offer an explanation other than discrimination why the employee suffered an adverse employment action. It is as if plaintiff told the employer, "I cannot get into your mind to prove with certainty that you acted against me based on a discriminatory motive. You, on the other hand, know the reason why you acted against me. I have done the best I can, which is to show that discrimination could have been the motive. Therefore, it is your turn to prove me wrong by articulating the non-discriminatory reason for your action." If the employer is unable to proffer a nondiscriminatory reason, plaintiff is entitled to summary judgment or judgment as a matter of law, as the case may be, if the employer proffers a reason and the plaintiff can produce enough evidence to enable a reasonable fact finder to conclude that the proffered reason is false, plaintiff has earned the right to present his or her case to the jury.

[*Marzano, supra,* 91 *F.*3d at 508.]

■ The establishment of the *prima facie* case creates an inference of discrimination, *Furnco Constr. Corp. v. Waters,* 438 *U.S.* 567, 577, 98 *S.Ct.* 2943, 2949–50, 57 *L.Ed.*2d 957, 967 (1978), and, at that point, the matter moves to the second stage of *McDonnell Douglas,* when the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's action. *Clowes, supra,* 109 *N.J.* at 596, 538 *A.*2d at 805.

■ In the third stage of the burden-shifting scheme, the burden of production shifts back to the employee to prove by a preponderance of the evidence that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision. *Ibid.* To prove pretext, a plaintiff may not simply show that the employer's reason was false but must also demonstrate that the employer was motivated by discriminatory intent. *Viscik, supra,* 173 *N.J.* at 14, 800 *A.*2d at 833. That burden merges with the plaintiff's ultimate burden of persuading the court that she or he was subjected to intentional discrimination. *Baker v. Nat'l State Bank,* 312 *N.J.Super.* 268,

287, 711 *A*.2d 917, 926–27 (App.Div.1998), *aff'd,* 161 *N.J.* 220, 736 *A*.2d 462 (1999). The burden of proof of discrimination does not shift; it remains with the employee at all times. *Clowes, supra,* 109 *N.J.* at 596, 538 *A*.2d at 805. "The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously" to the ultimate question of whether the employer intentionally discriminated. *Burdine, supra,* 450 *U.S.* at 253, 101 *S.Ct.* at 1093–94, 67 *L.Ed.*2d at 215. That is the overall backdrop on which our inquiry must take place.

## IV.

Because *McDonnell Douglas* arose in a hiring context, in *Clowes,* we recognized a need to adjust the elements of the *prima facie* case to account for differences in a discharge situation. *Clowes, supra,* 109 *N.J.* at 596–97, 538 *A*.2d at 805. We were concerned that although the "objectively qualified" standard is appropriate in a hiring case in which performance has not yet occurred, a termination case necessarily involves a different approach. Therefore, adopting the language from *Loeb, supra,* we stated that in a discharge case, a plaintiff must prove that: (1) he was in the protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left. *Id.* at 597, 538 *A*.2d at 805. That standard was not intended to impose a greater burden on a plaintiff in a termination case than that imposed in a hiring case; rather, it was meant as an analogue to the *McDonnell Douglas* standard. It is the second prong that is at issue here.

Zive contends that the Appellate Division correctly concluded that he proved the second prong by showing his "objective qualification" for the job as revealed by his eight year performance. Stanley Roberts counters that the words of *Clowes* mean exactly what they say—that on the *prima facie* case it is plaintiff's burden to show that he did what his employer expected of him and that

because Zive conceded that he did not meet the $2.5 million sales goal, he failed the second prong.

### A.

■ Of the forty-one jurisdictions (forty states and the District of Columbia) with case law on this subject, only eight (including New Jersey) have adopted the "employer's legitimate expectations" standard. *Chang v. Inst. for Pub.-Private P'ships, Inc.*, 846 *A.*2d 318, 324 (D.C.2004); *Barnes v. Goodyear Tire & Rubber Co.*, 48 *S.W.*3d 698, 708 (Tenn.2000); *Town v. Mich. Bell Tel. Co.*, 455 *Mich.* 688, 568 *N.W.*2d 64, 69 (1997); *Haroldsen v. Omni Enter., Inc.*, 901 *P.*2d 426, 430 (Alaska 1995); *Surry v. Cuyahoga Cmty. Coll.*, 149 *Ohio App.*3d 528, 778 *N.E.*2d 91, 97 (2002); *Koulegeorge v. Ill. Human Rights Comm'n*, 316 *Ill.App.*3d 1079, 250 *Ill.Dec.* 208, 738 *N.E.*2d 172, 180 (2000), *appeal denied*, 193 *Ill.*2d 587, 253 *Ill.Dec.* 3, 744 *N.E.*2d 285, *cert. denied*, 534 *U.S.* 886, 122 *S.Ct.* 195, 151 *L.Ed.*2d 138 (2001); *Excel Corp. v. Kan. Human Rights Comm'n*, 19 *Kan.App.*2d 6, 864 *P.*2d 220, 225 (1993). The remaining jurisdictions utilize either objective qualifications or a combination of objective qualifications and some evidence of performance as the second prong benchmark. *See, e.g., Guz v. Bechtel Nat'l, Inc.*, 24 *Cal.*4th 317, 100 *Cal.Rptr.*2d 352, 8 *P.*3d 1089, 1113 (2000) (stating plaintiff must show he was performing competently in position he held); *Shoppe v. Gucci Am., Inc.*, 94 *Hawai'i* 368, 14 *P.*3d 1049, 1059 (2000) (stating plaintiff must show she was qualified for position from which she was discharged); *Feges v. Perkins Rests., Inc.*, 483 *N.W.*2d 701, 711 (Minn.1992) (stating plaintiff must be qualified for position from which she was discharged); *Cates v. Regents of New Mexico Institute of Mining & Technology*, 124 *N.M.* 633, 954 *P.*2d 65, 70 (1998) (stating plaintiff must be qualified to continue in position).

There is a similar split in the federal circuits, which, like the states, have generally rejected the "employer's legitimate expectations" standard. The Court in *Bienkowski v. Am. Airlines, Inc.*, 851 *F.*2d 1503 (5th Cir.1988) explained why:

Although the *Loeb* approach has some appeal as a matter of principle, we cannot reconcile it with the Supreme Court's attempts, in *McDonnell Douglas* and *Burdine*, to simplify presentation of an employment discrimination case. Placing a plaintiff's "qualifications" in issue at both the prima facie case and pretext stages of a termination case is an unnecessary redundancy. Courts have struggled with the bifurcated analysis that results from *Loeb*. The requirement that a plaintiff prove he is meeting his employer's reasonable expectations represents an imperfect attempt at analogy with *McDonnell Douglas*. ... Consequently, a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action. The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination.

[*Id.* at 1505–06 (citations omitted); *see also Carter v. Three Springs Residential Treatment*, 132 *F.*3d 635, 643 (11th Cir.1998)(holding plaintiff must show only that he had minimum requirements or qualifications for job to establish *prima facie* case).]

The Third Circuit adopted the same approach in *Sempier v. Johnson & Higgins*, 45 *F.*3d 724, 729 (3d Cir.), *cert. denied*, 515 *U.S.* 1159, 115 *S.Ct.* 2611, 132 *L.Ed.*2d 854 (1995), denying an employer's summary judgment motion because plaintiff "had the objective experience and education necessary to qualify as a viable candidate for the positions he held." *See also Weldon v. Kraft, Inc.*, 896 *F.*2d 793, 797–99 (3d Cir.1990)(denying summary judgment to employer because plaintiff "had both the intelligence and the ability required for the position"). Approaching the issue slightly differently, in *Jalil v. Avdel Corp.*, 873 *F.*2d 701, 707 (3d Cir.1989), *cert. denied*, 493 *U.S.* 1023, 110 *S.Ct.* 725, 107 *L.Ed.*2d 745 (1990), the Court equated performance and qualification and held that an employee's long-term performance of duties, leading to a promotion, clearly established his "qualifications" for the job.

The Ninth Circuit has adopted a position midway between "objectively qualified" and "legitimate expectations," requiring evidence of satisfactory job performance sufficient to create a jury question. *Douglas v. Anderson*, 656 *F.*2d 528, 533 n. 5 (9th Cir.1981). Likewise, in *Crimm v. Mo. Pac. R.R. Co.*, the Eighth Circuit has held that a plaintiff need not prove compliance with all of his employer's rules and regulations in order to establish a *prima facie* case but only that his performance was satisfactory, at

least until the incident in question. 750 *F*.2d 703, 711–12 (8th Cir.1984). *But see Miller v. Citizens Sec. Group, Inc.*, 116 *F*.3d 343, 346 (8th Cir.1997)(approving district court's articulation of second prong as "performance of the job at a level that met the employer's legitimate expectations").

Interestingly, the Second Circuit has accepted the "performing satisfactorily" language but interprets it as "objectively qualified":

> Thus a mere variation in terminology between "qualified for the position" and "performing . . . satisfactorily" would not be significant so long as, in substance, all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer. The qualification prong must not, however, be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision.
>
> [*Slattery v. Swiss Reinsurance Am. Corp.*, 248 *F*.3d 87, 91–92 (2d Cir.), *cert. denied*, 534 *U.S.* 951, 122 *S.Ct.* 348, 151 *L.Ed.*2d 263 (2001).]

Although the Sixth Circuit utilizes the "employer's legitimate expectations" as the theoretical framework for the second prong, in *Cline, supra*, 206 *F*.3d at 661, that court held that the district court improperly conflated the stages of *McDonnell Douglas* in finding plaintiff had failed to satisfy the *prima facie* standard because she did not exemplify the moral values expected by the employer. Similarly, the First Circuit uses the "employer's legitimate expectations" standard but found it satisfied when the plaintiff "functioned adequately" in his position for several years and the defendants did not challenge that he "lacked the necessary skills to do his job." *Suarez v. Pueblo Int'l, Inc.*, 229 *F*.3d 49, 54 (1st Cir.2000).

The Tenth Circuit melds all approaches by allowing a plaintiff to make out the second prong of the *prima facie* termination case in three distinct ways: by showing that she continued to possess the objective qualifications she held when she was hired, by testifying that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time. *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 *F*.2d 1115, 1121 (10th Cir.1991).

As their language reveals, at issue in all of those cases is not the semantic difference between "objectively qualified" and "satisfying the employer's legitimate expectations." Indeed, many of the cases interchange those terms by setting forth a paradigm in which performance equals qualification. *Slattery, supra,* 248 *F.*3d at 91–92; *Jalil, supra,* 873 *F.*2d at 707. What is at the heart of the cases is an underlying unease over making the second prong in a termination case greater than the second prong in a hiring case and thus casting too great a burden on a LAD termination plaintiff. That reluctance to accept the "employer's legitimate expectations" test at face value springs out of the subjective nature of "expectations" and the difficulty an ordinary plaintiff would encounter in anticipating and bearing his or her burden of producing evidence of what was in the employer's mind.

We dealt with that problem in *Viscik, supra,* to some extent, where we held that the "employer's legitimate expectations" is an objective and not a subjective standard and, as the vast majority of our sister jurisdictions have, reserved the issue of the employer's subjective expectations for the pretext stage of a LAD case. *Viscik, supra,* 173 *N.J.* at 21, 800 *A.*2d at 837–38.

Today we address what kind of evidence will satisfy that objective standard. We continue to believe that *Loeb, supra,* and *Clowes, supra,* sensibly recognized the need for a distinction between the *prima facie* standard in a hiring case and in a termination case. We also reaffirm the obvious—that although the second prong in a termination case necessarily requires refinement to address the differences between failing-to-hire and firing, it is not intended to impose a heavier burden on the plaintiff.

That said, we recognize the language of *Loeb, supra,* and *Clowes, supra,* regarding the second prong as, at best imprecise and at worst, misleading. All that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination. Along with the remaining prongs of the *prima facie* case, that evidence is sufficient to support the conclusion that the plaintiff's claim of discrimination is plausible

enough to warrant promotion to the next step of the *McDonnell Douglas* test. That is not a heavy burden nor was it meant to be. Indeed, the opposite conclusion would have the effect of precluding cases in which poor performance contributed to but was not the determinative factor in the termination decision. *See Bergen Commercial Bank v. Sisler*, 157 *N.J.* 188, 207, 723 *A.*2d 944, 953 (1999) (stating LAD plaintiff must show that prohibited consideration played role in decision-making process and had determinative influence).

As we have indicated, only the plaintiff's evidence should be considered. That evidence can come from records documenting the plaintiff's longevity in the position at issue or from testimony from the plaintiff or others that she had, in fact, been working within the title from which she was terminated. Because performance markers like poor evaluations are more properly debated in the second and third stages of the burden-shifting test, they do not come into play as part of the second prong of the *prima facie* case. *Greenberg v. Camden County Vocational & Technical Schools*, 310 *N.J.Super.* 189, 202, 708 *A.*2d 460, 467 (App.Div.1998). Thus, even if a plaintiff candidly acknowledges, on his own case, that some performance issues have arisen, so long as he adduces evidence that he has, in fact, performed in the position up to the time of termination, the slight burden of the second prong is satisfied. Simple proof of continued employment is not enough. That formulation of the second prong is an apt analogy to the second prong of *McDonnell Douglas;* any other interpretation would ratchet up the second prong in a termination case and upend the "complex evidentiary edifice" built by *McDonnell Douglas. Marzano, supra,* 91 *F.*3d at 510.

Contrary to Stanley Roberts's contention, the refinement we have here adopted will not result in affording a jury trial to every aggrieved plaintiff in a protected class. As stated in *Fuentes v. Perskie*, 32 *F.*3d 759, 764 (3d Cir.1994), if the employer proffers a non-discriminatory reason, plaintiff does not qualify for a jury trial unless he or she can "point to some evidence, direct or

circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." That is a significant enough burden to relieve any practical concerns over the rule we have limned today. If it is clear that that obligation cannot be met, defendants will prevail at summary judgment. We note, incidentally, that although a plaintiff's acknowledgment of performance deficiencies does not factor into the second prong of the *prima facie* case, it will generally lighten the employer's burden on the second phase and render more difficult plaintiff's ability to prove pretext.

## B.

Applying that standard, we are satisfied that Zive established a *prima facie* case, including the second prong. Concededly, he was a member of a protected class. He had significant experience as a sales executive prior to his employment with Stanley Roberts. He had worked for Stanley Roberts for eight years and had been actively engaged in the management and administration of Homeworld. Importantly, until the time of his stroke, he had never been told that his job was at stake. He was terminated shortly after the stroke, at which time Stanley Roberts continued Homeworld with Tom Garda, and later another employee, performing Zive's functions.[2] That is all that is required.

It is true that Zive acknowledged that he had fallen short of the $2.5 million sales goal. However, as we have said, that was not an issue on the *prima facie* case. Whether Pomeranz's goal was realistic or merely aspirational, and whether reasons other than the nature of Zive's performance affected the outcome remained for full debate in the second and third phases of the

---

[2] Although Stanley Roberts challenges that the fourth prong was satisfied, the March 22, 1999 memo it circulated after Zive's termination amply supports this prong on a directed verdict inquiry.

*McDonnell Douglas* paradigm, otherwise as part of plaintiff's case-in-chief, or as part of defendant's substantive defense.

### V.

We turn now to Stanley Roberts's allegation that the trial judge improperly instructed the jury. Stanley Roberts argues that the trial judge erred in refusing to charge the jury on the elements of the *prima facie* case. We thought that issue was laid to rest in *Mogull v. CB Commercial Real Estate Group, Inc.,* 162 *N.J.* 449, 472, 744 *A.2d* 1186, 1199–1200, *certif. denied,* 165 *N.J.* 607, 762 *A.2d* 221 (2000). There, we specifically approved of the Appellate Division's contrary holding in *Baker, supra,* 312 *N.J.Super.* at 288, 711 *A.2d* at 927, to the effect that it is unnecessary to charge the jury on the elements of the *prima facie* case.[3] *Baker* stated:

> Once defendants [come] forward with their legitimate, non-discriminatory reasons for terminating plaintiffs, the presumption and burden-shifting of the *prima facie* case bec[ome] irrelevant. The jury was properly required to make only the ultimate finding of fact, whether defendants discriminated against plaintiffs [because of disability].
>
> ... [M]any courts which have considered the issue have determined that, in an employment discrimination case, it is either unnecessary or incorrect to charge the jury on the elements and burden-shifting of the *prima facie* case. *See Shattuck v. Kinetic Concepts, Inc.,* 49 *F.*3d 1106, 1110 (5th Cir.1995) (rejecting the employer's contention that the jury charge was erroneous because it omitted an element of the *prima facie* case, concluding that "the pertinent inquiry is whether the plaintiff has proven discrimination, not whether he has made a *prima facie* case."); *Gehring v. Case Corp.,* 43 *F.*3d 340, 343 (7th Cir.1994), *cert. denied,* 515 *U.S.* 1159, 115 *S.Ct.* 2612, 132 *L.Ed.*2d 855 (1995) ("burden-shifting model applies to pretrial proceedings, not to the jury's evaluation of evidence at trial").....
>
> [*Baker, supra,* 312 *N.J.Super.* at 288, 711 *A.2d* at 927.]

As we have said, the *prima facie* case on a termination claim—plaintiff's proof by a fair preponderance of the evidence that plaintiff (1) belongs to a protected class, (2) was performing in the position from which she was terminated, (3) nevertheless was fired, and (4) the employer sought someone to perform the same

---

[3] It may be that *Viscik, supra,* caused this issue again to rear its head. There, the trial judge instructed the jury regarding the *prima facie* case. That issue was not raised on appeal before us and therefore was not addressed in our opinion.

work after she left—serves essentially a gatekeeping function. *Mogull, supra,* 162 *N.J.* at 471, 744 *A.*2d at 1199. Once the plaintiff overcomes that hurdle, the *prima facie* case is no longer relevant. At that point, a presumption arises that plaintiff's termination was discriminatory. The defendant then bears the burden of rebutting that presumption by articulating a legitimate and non-discriminatory reason for the termination, and the plaintiff is entitled to show that the reasons advanced by the defendant are a pretext for discrimination. Once that paradigm has been satisfied, causation and damages are all that remain.

It bears repeating that the fact that the jury is not instructed on the *prima facie* case does not remove the issue of performance from the jury's consideration. The jury will necessarily consider an employee's performance when it decides the ultimate question of whether the employee was fired as a result of discrimination.

## VI.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—7.

*Opposed*—None.