**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4108-18T1

MICHELE MEADE,

    Plaintiff-Appellant,

v.

TOWNSHIP OF
LIVINGSTON,

    Defendant-Respondent.

_____

        Submitted October 26, 2020 – Decided November 12, 2020

        Before Judges Sabatino and DeAlmeida.

        On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0916-17.

        Lenzo & Reis, LLC, attorneys for appellant (Christopher P. Lenzo, of counsel and on the briefs).

        Fernandez Garcia, LLC, attorneys for respondent (Juan C. Fernandez, of counsel and on the brief; Michael Garcia, on the brief).

PER CURIAM

Plaintiff Michele Meade, the former Manager of Livingston Township, appeals the trial court's order granting the defendant Township summary judgment in this wrongful discharge case. We affirm the trial court's decision.

I.

Although the pretrial record is extensive, the salient facts and claims may be summarized as follows.

Plaintiff was appointed Township Manager in Livingston in 2005. She served in that role for eleven years. She was an at-will employee under the applicable statute, as well as under the terms of her employment contract. See N.J.S.A. 40:69A-93 ("The municipal manager shall hold office for an indefinite term and may be removed by a majority vote of the council.").

In November 2016, plaintiff was terminated by the five-member Township Council by a majority vote of four-to-one. The Council terminated her because of problems it noted with her job performance (such as being untimely and insufficiently responsive to the Council and the public in certain matters), problems that were largely documented in her last performance evaluation. The termination occurred after the Council gave plaintiff and her

attorney an opportunity to appear in a closed-door session known as a "Rice hearing"[1] to discuss the matter.

Plaintiff was the Township's first female Manager. She claims the Council fired her and replaced her with a male because it was wrongfully influenced by the anti-female bias of the Township's male Police Chief, who reported to her. She asserts that her discharge was based on gender discrimination in violation of the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -43.

More specifically, plaintiff contends the Chief was not doing his job well, was uncooperative and recalcitrant as her subordinate, and deserved to be removed. She asserts the Council refused to support her request to conduct an independent, third-party investigation of the Chief, as had been recommended

---

[1] Under this State's Open Public Meetings Act, N.J.S.A. 10:4-6 to -21, a public body may exclude the public from a meeting to discuss an employee's employment status, unless the employee requests, in writing, that the hearing be public. N.J.S.A. 10:4-12(b)(8). This applies to any "employee employed or appointed by the public body." Ibid. Public employees must receive reasonable notice "when a public entity intends to consider taking adverse employment action related to them" to give them time to respond. Kean Fed'n of Teachers v. Morell, 233 N.J. 566, 573 (2018). This reasonable notice, known as a "Rice notice," informs employees of their right to request a public hearing and allows them time to prepare an appropriate written response. Ibid.; see also Rice v. Union Cnty. Reg'l High Sch. Bd. of Educ., 155 N.J. Super. 64 (App. Div. 1977) (establishing the "Rice notice" requirements).

by the Township's outside labor counsel. Eventually the Chief retired about two years after plaintiff was discharged.

In support of her theory of discriminatory conduct, plaintiff relies upon remarks attributed to two Councilmen. One of those Councilmen allegedly told plaintiff while he was serving as Mayor, that "maybe [the] Chief . . . did not like reporting to a woman and should report to him as the Mayor instead." The other remark made by a different Councilman, which is not disputed, was essentially that plaintiff would not be having problems with the Chief if she were a man. Nevertheless, plaintiff does not claim that any of the individual Council members personally harbored any gender bias against her, and they were dismissed as codefendants at an early stage of the lawsuit. The sole defendant and respondent on this appeal is the Township, as plaintiff's former employer.

The underlying circumstances were deeply explored in extensive pretrial depositions and document production. When that discovery was completed, the Township moved for summary judgment.

In a lengthy oral opinion issued on April 11, 2019, Presiding Judge Thomas M. Moore granted the Township's motion, finding no genuine issue of material fact or viable legal theory that could support the Township's liability for wrongful discharge under the LAD. Among other things, the judge found

that the Township's asserted grounds for discharging plaintiff were manifestly not pretextual, noting the record provides "[m]any, many examples of [her] inadequate performance," and the "extensive negative feedback" in her last evaluation. The judge also noted that plaintiff was vested with the sole authority to fire or discipline the Police Chief, but she failed to exercise that authority despite the Council's repeated requests that she do so.

Plaintiff now appeals, arguing that the judge erred in dismissing her claims. We reject her contentions and affirm, substantially for the reasons set forth in Judge Moore's oral opinion with some minor modification.

## II.

To place this case in context, we highlight several pertinent statutes and ordinance provisions that address the parties' respective roles and responsibilities.

By statute, the Township Manager is "the chief executive and administrative official of the municipality." N.J.S.A. 40:69A-95(a). The Manager is authorized to "[a]ppoint and remove . . . all department heads and all other officers, subordinates, and assistants, except a municipal tax assessor . . . ." N.J.S.A. 40:69A-95(c). As part of the Manager's supervisory powers, he

A-4108-18T1

or she is empowered to "[i]nvestigate at any time the affairs of any officer or department of the municipality."  N.J.S.A. 40:69A-95(h).

In the Council-Manager governing relationship, the Council is responsible for "matters of policy," for the creation of municipal departments, and for the appointment of a limited number of employees, including the Township Manager, Clerk, and Township Attorney, and not including the Chief of Police. See generally N.J.S.A. 40:69A-88 (enumerating the powers of the municipal council); N.J.S.A. 40:69A-89 (prescribing powers of appointment); N.J.S.A. 40:69A-90 (noting the council may create and define the powers of municipal departments).

Also by statute, the Council "shall deal with the administrative service solely through the manager and shall not give orders to any subordinates of the manager, either publicly or privately."  N.J.S.A. 40:69A-91 (emphasis added).

The Council does have the authority to "conduct investigations into the conduct of any officer or department" or on matters of town welfare.  Ibid. However, council members may not "direct or request the appointment of any person to, or his removal from, office; or to interfere in any way with the performance by such officers of their duties."  Ibid.  If a councilperson violates this prohibition, he or she may be removed from office on that basis.  Ibid.

A-4108-18T1

Consistent with this statutory allocation of powers, the Livingston Township Code[2] expressly vests the Township Manager with the authority to order, supervise, and discipline the Police Chief, and to terminate him for cause. Specifically, Township Code § 35-7, "Duties of the Chief of Police" reads: "The Chief of Police shall be the chief administrative officer of the Division of Police, <u>subject to such rules, regulations and orders as may</u>, from time to time, <u>be established by general law or by the Manager</u> in writing."  (Emphasis added).

More pointedly, Township Code § 35-10(A), covering the "Suspension and Dismissal" of police officers, reads:

> <u>The Manager shall have the power and authority to reprimand, suspend, dismiss, deduct pay or reduce in rank</u>, according to the nature and degree of his offense, <u>any member of the Police Division for any violation of any of the rules and regulations</u> governing the Division of Police including the following acts:
>
> . . . .
>
> (2) Willful disobedience of orders
>
> . . . .
>
> (8) Absence without leave
>
> . . . .

---

[2]  Available at: https://ecode360.com/10298754.

(24) Refus[al] to perform any duty, evasion of any duty, whether on duty or elsewhere, and whether in uniform or not.

[(Emphasis added).]

That said, although the Police Chief was plaintiff's subordinate, he did have certain statutory and procedural protections from arbitrary dismissal. If a police officer is to be removed for cause, she must receive a written complaint detailing the charges against her within a certain amount of time. N.J.S.A. 40A:14-147. She is also entitled to a hearing before the disciplining body to dispute the charges brought against her. Ibid.

Hence, although plaintiff was the Police Chief's boss, she could only terminate him for cause. Under the relevant statutes, such "cause" includes failure to comply with applicable Township rules and regulations. See N.J.S.A. 40A:14-147 (providing, among other things, that "no permanent member or officer of [a] police department or force" may be removed "for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force") (emphasis added).

A-4108-18T1

The parties agree that plaintiff had an antagonistic relationship with the Police Chief. The parties also agree that plaintiff's failure to discipline or fire the Chief was a significant factor in her termination.

According to plaintiff, the Chief repeatedly failed to perform his duties properly and with accountability. She points in this regard to evidence of his "habitual failure to meet deadlines" and "chronic absenteeism without proper notice." The record also contains evidence that other Township employees had difficulties with the Chief, and that several Council members noted those problems. In fact, the record shows the Council asked plaintiff on several occasions to do something about it. Even so, the record supports the judge's finding that plaintiff did not discipline the Chief or alter his behavior.

Under the applicable laws and ordinance provisions we have cited, it is beyond dispute that plaintiff was the only person who could supervise and fire the Chief. The Township Council could not.

Plaintiff contends that she was impeded by the Council in taking action against the Chief because the Council did not authorize an expenditure for an independent investigation of the Chief's performance. Plaintiff states that such an investigation had been recommended by the Township's outside labor attorney.

Nonetheless, an outside investigation was not required in order for the Chief to be disciplined or terminated for cause. As we noted, the statutes do say that a Chief can only be removed for cause. But, as plaintiff contends, here there were documented problems with the Chief's absenteeism, his failure to report to her properly, and his poor judgment, including a controversial decision to conduct a SWAT-team drill next door to a day care center. Perhaps an outside investigation corroborating such shortcomings ultimately may have been helpful for defending, after the fact, a decision to remove or discipline the Chief, but such an investigation was not mandatory. The Council had the discretion to not allocate public funds from the municipal budget for this purpose. Plaintiff already possessed the sole authority to discharge or discipline the Chief.

Plaintiff contends the Chief refused to accede to her oversight as manager for discriminatory reasons, i.e., because she is a woman. Notably, however, she does not claim that her subordinate's sexist behavior created a hostile work environment, or that the Council failed to address such a situation. See Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (1993) (delineating the elements of a hostile work environment claim).

In a sense, plaintiff's theory of liability under the LAD is upside down. She contends that the allegedly sexist refusal of the Chief to yield to her

supervision makes the Council's decision to terminate her own employment discriminatory. But plaintiff had the singular authority to remove or discipline the Chief. The Council did not endorse or ratify his behavior. Plaintiff had the power to take action against the Chief as her subordinate, but she did not.

Meanwhile, the Council presented to the trial court a host of non-discriminatory grounds substantiating why it was dissatisfied with plaintiff's own performance as a Township Manager. The Township did not need any grounds to terminate plaintiff, who served at the will of the Council, but nonetheless presented numerous business reasons for terminating her.

In sum, any discrimination here came from below plaintiff, not above her. She had the authority to eliminate the problem herself. This is not to presume that the Chief would have willingly accepted discipline or removal. Such adverse action may well have caused him to invoke his statutory rights to a hearing, and to litigate the matter. But there is no evidence that the Council would have interfered with plaintiff's managerial prerogatives. Indeed, as we have noted, N.J.S.A. 40:69A-95(c) makes it illegal for Council members to interfere with the Township Manager's personnel decisions.

Given these circumstances, the trial judge appropriately found plaintiff's claims under the LAD were not viable, even viewing the record—as it must be—

11

in a light most favorable to plaintiff.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 524 (1995).

The judge's decision comported with the substantive facets of the LAD. Although plaintiff, as a female, is a member of a protected class under the LAD, the defendant Township is not liable unless plaintiff sustains her burden to demonstrate her removal was based upon gender-based discriminatory reasons. See Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005).  None are apparent here.

Even assuming, for the sake of discussion, that plaintiff presented a prima facie claim of discrimination here, the Township countered with ample non-pretextual reasons that justified ending her tenure as Township Manager.  Ibid. (explaining the "McDonnell-Douglas" burden-shifting construct patterned after federal Title VII case law).  There is no credible evidence that those asserted reasons, as a whole, were a pretext for gender discrimination.

The majority of the elected Council members had the prerogative, under both municipal statutes and the terms of plaintiff's contract, to effectuate a change.  This is not to say, of course, that plaintiff was incapable of performing her duties as a Manager, or that her entire eleven years of service to the Township have been disappointing.  What is clear is that by the end of plaintiff's

tenure, the Council no longer had sufficient confidence in her performance to continue her in that role. The Council did not engage in gender discrimination by letting her go.

For all of these reasons, our de novo review of the record supports the trial court's decision to grant summary judgment. We have considered all of the arguments presented in plaintiff's brief. To the extent we have not already discussed them expressly, we have concluded they are without merit. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4108-18T1