**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1526-23

MICHAEL HAND,

    Plaintiff-Appellant,

v.

BOROUGH OF NEW PROVIDENCE,
AL MORGAN, Mayor of the Borough
of New Providence, BOROUGH
COMMITTEE OF THE BOROUGH
OF NEW PROVIDENCE, THERESA
GAZAWAY, Chief of Police of the
Borough of New Providence, and
ANTHONY BUCCELLI JR., Retired
Chief of Police of the Borough of
New Providence,

    Defendants-Respondents.

_____

Argued March 27, 2025 – Decided April 2, 2025

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2250-20.

Leonard C. Schiro argued the cause for appellant (Mets Schiro & McGovern, LLP, attorneys; Leonard C.

Schiro and Nicholas P. Milewski, of counsel and on the briefs).

Robert F. Renaud argued the cause for respondents (Renaud Colicchio LLC, attorneys; Robert F. Renaud, on the brief).

PER CURIAM

Plaintiff Michael Hand appeals from a January 10, 2024 order granting reconsideration of an order, which denied defendants the Borough of New Providence and the Borough Committee of the Borough of New Providence summary judgment, and dismissed plaintiff's claim pursuant to the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1. We affirm.

Plaintiff was formerly employed as a corporal in the New Providence Police Department (NPPD). In a prior appeal we recounted the salient facts, which prompted an internal affairs (IA) investigation, because plaintiff failed to respond in a timely manner to a domestic violence call on May 17, 2019. Hand v. Borough of New Providence, No. A-1097-21 (App. Div. Oct. 17, 2023) (slip op. at 4-7). Relevant to the issues raised here, plaintiff challenged the NPPD's initial determination to suspend him without pay for twenty days. This resulted in a formal disciplinary hearing, which occurred on December 16, 2019. However, prior to the hearing, on July 3; September 4, and 27; November 19; December 15, 2019; and on the day of the hearing itself, plaintiff contacted a

patrol officer who was scheduled to testify as a witness at the hearing multiple times to discuss his testimony. Id. at 8-10.

This prompted a second investigation for witness tampering, initiated the day after the hearing, which involved the NPPD and the Union County Prosecutor's Office (UCPO). In January 2020, the UCPO recommended the NPPD address the matter administratively as it appeared plaintiff's actions were a violation of the NPPD rules and regulations. In March 2020, the UCPO concluded it would not pursue criminal charges against plaintiff. In April 2020, the NPPD, pursuant to its investigation, filed a disciplinary action alleging plaintiff violated NPPD Rules and Regulations Sections: 2:1.3(5), Police Officer Conduct; 3:1.1, Standard of Conduct; and 3:5.7, Intercession; and N.J.S.A. 40A:14-147, Conduct Unbecoming a Public Employee, specifically witness tampering. Id. at 13.

The officer conducting the NPPD investigation concluded plaintiff had committed all the above violations, save for the witness tampering charge. He recommended a six-month suspension. However, the NPPD decided to terminate plaintiff, and a disciplinary hearing was thereafter conducted in June and August 2020. The disciplinary hearing included testimony from the NPPD investigator; the patrol officer who was the fact witness in his first hearing; and

the then-current NPPD Chief of Police, Theresa Gazaway.  The hearing officer concluded plaintiff attempted to influence the patrol officer's testimony in a manner favorable to plaintiff, and essentially "lie for him." Id. at 18.  The NPPD issued its final disciplinary decision terminating plaintiff.

Plaintiff appealed from the decision and a Law Division judge conducted a de novo hearing.  The judge affirmed the NPPD's decision to terminate plaintiff.  We affirmed the Law Division judge's decision. Id. at 29-32.

Plaintiff filed his CEPA complaint on July 15, 2020.  He alleged former NPPD Chief of Police Anthony Buccelli unevenly applied department rules and regulations and targeted him for retaliation.  He claimed certain members of the department, including the current Chief, violated department rules by consuming alcohol on the job, and drinking and driving.  Plaintiff asserted this is what prompted the initial investigation leading to the department seeking a twenty-day suspension.

Afterwards, plaintiff alleged he and two officers discovered Chief Buccelli had left his locker door open, exposing his loaded service guns, which constituted a violation of Attorney General Guidelines, and department rules and regulations.  Plaintiff "reported Chief Buccelli to [the] UCPO on August 9, 2019[,] for his unsafe storage of his service weapons . . . [that plaintiff] believed

. . . to be illegal and/or against a clear mandate of public policy." The UCPO investigated and sustained a violation of NPPD standard operating procedures #110 for the unsafe storage of firearms.

Plaintiff claimed he then received another disciplinary notice to interview him regarding insubordination charges after the NPPD discovered an email plaintiff sent disparaging two superiors. The insubordination charges were sustained, and plaintiff received a written reprimand. Plaintiff was then served with an IA complaint investigating him for violation of rules and regulations, and a month later served with the preliminary disciplinary notice signed by Chief Buccelli seeking his termination. Plaintiff asserted Chief Buccelli retaliated against him for his whistle-blowing conduct related to the chief's weapons storage violation.

All defendants moved for summary judgment following the close of discovery. The Law Division judge granted defendants' summary judgment motion in part, but found plaintiff had a valid mixed-motive CEPA claim against the Borough and Borough Committee and denied those defendants summary judgment. The judge found the allegations in the complaint regarding Chief Buccelli constituted whistle-blowing activity sufficient to shift the burden onto defendants "to articulate some legitimate . . . non-discriminatory reason for the

adverse employment action.  Obviously[,] the fact that these charges were brought and sustained would meet that burden."  The judge reasoned the mixed-motive claim was not barred by collateral estoppel because the retaliation claim was neither mentioned in the hearing officer's findings nor raised before the judge.  Defendants' subsequent motion for reconsideration was denied on May 22, 2022.

On October 17, 2023, we issued our opinion affirming plaintiff's termination and rejecting all the arguments he raised on appeal.  Hand, slip op. at 36-37.  We concluded the record supported "the finding that plaintiff's actions constitute[d] misconduct" and conduct unbecoming of a public employee under N.J.S.A. 40A:14-147.  Id. at 27.  The Law Division judge "reasonably determined as an experienced police officer, plaintiff was aware that his repeated attempts to persuade" the patrol officer to testify favorably "constituted witness tampering."  Id. at 29.  Our review of "[t]he record also support[ed the judge's] finding that plaintiff violated the rule against intercession by seeking to undermine the disposition of the disciplinary charges against him."  Ibid.

Following our decision, defendants filed a second motion for reconsideration of the summary judgment ruling, which was heard by a different judge.  On November 17, 2023, the motion judge issued a written decision

granting defendants summary judgment on grounds of collateral estoppel. He reasoned our affirmance of the first judge's ruling upholding plaintiff's termination constituted a "binding final judgment . . . that the termination of [p]laintiff's employment was the necessary discipline in response to [plaintiff] . . . attempting to influence the outcome of a disciplinary hearing by tampering with a witness." Therefore, plaintiff's CEPA claim was collaterally estopped including "the issues of pretext or mixed[-]motive in his firing."

I.

On appeal, plaintiff argues his mixed-motive CEPA claim should have survived dismissal because the retaliatory discipline was not raised before the hearing officer, the Law Division, or in the prior appeal, and therefore could not be barred by collateral estoppel. He asserts he established a prima facie case for a mixed-motive CEPA claim and defendants' institution of disciplinary proceedings one day after Chief Buccelli learned about plaintiff's complaint against him for the improperly stored firearms was pretextual. Plaintiff claims he did not violate the intercession rule by speaking with the patrol officer.

II.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (omission in original)

(quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87 (2010)). "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

We review an order granting summary judgment de novo. Graziano v. Grant, 326 N.J. Super. 328, 338 (App. Div. 1999). Like the motion judge, we consider all the evidence submitted "in the light most favorable to the non-moving party" and determine if the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Collateral estoppel means "simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443 (1970). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982).

CEPA prohibits employers from taking retaliatory action, N.J.S.A. 34:19-3, which is defined as "the discharge, suspension[,] or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). A plaintiff must prove: they reasonably believed their employer violated a rule or regulation; the plaintiff "performed a 'whistle-blowing' activity[,]" including objecting to the employer's violation; there was "an adverse employment action taken against" them; and "a causal connection exists between the whistle-blowing activity and the adverse employment action." Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).

CEPA follows the same framework for proving a claim under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50. Kolb v. Burns, 320 N.J. Super. 467, 477 (App. Div. 1999). A retaliation claim can be proved by pretext or mixed-motive, which have their own framework. Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 290 (App. Div. 2001). The difference in approach "is the extent to which the plaintiff relies upon inferences from the circumstances to establish a causal connection between the . . . retaliation and the firing or other adverse action suffered by the [plaintiff]." Ibid.

A-1526-23

"Pretext triggers a presumption that enables the employee to 'prove an employer's discriminatory intent through circumstantial evidence.'" Id. at 291 (quoting Bergen Com. Bank v. Sisler, 157 N.J. 188, 209 (1999)). The prima facie case creates a presumption of retaliatory discharge, shifting the burden of production to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. Allen v. Cape May Cnty., 246 N.J. 275, 290-91 (2021). The presumption dissipates upon the employer's proof of a legitimate reason for the employment action. Sisler, 157 N.J. at 211.

In the final stage of the burden-shifting framework, the employee must "prove by a preponderance of the evidence that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision." Meade v. Twp. of Livingston, 249 N.J. 310, 329 (2021) (quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005)). "Although the burden of production shifts throughout the process, the employee at all phases retains the burden of proof that the adverse employment action was caused by purposeful or intentional discrimination." Id. at 330 (quoting Sisler, 157 N.J. at 211). If the employer fails to rebut the plaintiff's prima facie case with a legitimate reason, the plaintiff is entitled to summary judgment, and if "the plaintiff can produce enough evidence to enable a reasonable fact finder to

conclude that the proffered reason is false, [the] plaintiff has earned the right to present [their] case to the jury." Zive, 182 N.J. at 449 (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)).

A mixed-motive CEPA retaliation case is where a plaintiff establishes the employer had "retaliatory and non-retaliatory motives." Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 282 (2016). A plaintiff "need 'only prove that retaliation played a role in the decision and that it made an actual difference in defendant's decision.'" Id. at 283 (emphasis omitted) (citing Model Jury Charges (Civil), § 2.32.).

"The evidentiary burden at the prima facie stage is 'rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination could be a reason for the employer's action.'" Zive, 182 N.J. at 447 (emphasis omitted) (quoting Marzano, 91 F.3d at 508). "Simply stated, a plaintiff has established a prima facie case when" they have introduced sufficient evidence to support the inference "that if the employer's actions remain unexplained, it is more likely than not that such actions were based on impermissible reasons." Bowles v. City of Camden, 993 F. Supp. 255, 265 (D.N.J. 1998) (citing Furnco Constr. Corp. v. Waters, 438 U.S. 567, 576 (1978)). "[T]he prima facie case is to be evaluated solely on the

basis of the evidence presented by the plaintiff, irrespective of defendants' efforts to dispute that evidence." Zive, 182 N.J. at 448 (citing Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 661 (6th Cir. 2000)).

The motion judge neither abused his discretion, nor committed a mistake of law when he granted defendants reconsideration and summary judgment on grounds of collateral estoppel. When we upheld plaintiff's termination, that extinguished any ability to assert defendants had acted for an illegitimate reason, which was fatal to the CEPA claim under the pretext and mixed-motive framework. Plaintiff could not relitigate the validity of his termination as it was the same issue that was adjudicated in the prior appeal. Our determination was final and based on the merits. The legitimacy of his termination was essential to both the prior appeal and this one. Additionally, plaintiff is a party to the prior proceeding and this one.

Notwithstanding the collateral estoppel, we reject the argument there was circumstantial evidence in the form of a temporal proximity between plaintiff's whistle-blowing activity related to Chief Buccelli's improper gun storage and the alleged retaliation. Plaintiff reported Chief Buccelli's violation in August 2019. Chief Buccelli did not learn of the witness tampering until months later, at the December 16, 2019 hearing. It was, therefore, entirely appropriate to open

an investigation into that rather serious charge the next day. Moreover, Chief Gazaway participated in the disciplinary hearing leading to plaintiff's termination. Chief Buccelli played no role in that disciplinary hearing. Simply put, plaintiff's CEPA claim could not survive under either the pretext or mixed-motive framework because defendants offered a legitimate non-discriminatory reason for plaintiff's termination, and he lacked direct and circumstantial evidence of a retaliatory motive.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

13

A-1526-23