NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1411-17T3

ROBERT J. HAHN,

     Plaintiff-Appellant,

v.

ONE CALL CARE
MANAGEMENT,

     Defendant-Respondent.

_____

Argued November 26, 2018 – Decided  December 17, 2018

Before Judges Fasciale, Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1786-15.

Noel C. Crowley argued the cause for appellant (Crowley & Crowley, attorneys; Noel C. Crowley and Michael C. Crowley, on the briefs).

Timothy D. Speedy argued the cause for respondent (Jackson Lewis, PC, attorneys; Timothy D. Speedy, of counsel and on the brief; Joseph C. Toris, on the brief).

PER CURIAM

In this employment discrimination matter, plaintiff Robert J. Hahn appeals from an October 5, 2017 order granting summary judgment to defendant One Call Care Management (One Call), dismissing his complaint. We affirm.

I.

We confine our review to the motion record before the Law Division judge, Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000), extending to plaintiff all favorable inferences. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)). Defendant is a private entity that electronically manages and processes workers' compensation claims. Plaintiff, an employee of defendant since June 2001, alleged he was terminated from his position as a sales data management coordinator based on his age and disability. At the time of his termination, plaintiff was seventy-one years old and suffered from Crohn's disease.[1]

Plaintiff initially was assigned to defendant's call center and then to its finance department. Sometime in 2007, Sandy Williams, plaintiff's then

---

[1] Plaintiff also refers to this disease as chronic colitis. We use both terms interchangeably in our opinion. Plaintiff also suffers from diabetes and bipolar disorder but his complaint does not set forth a cause of action pertaining to these conditions.

A-1411-17T3

supervisor "permitted [p]laintiff to rest or take naps <u>on his breaks</u>."  (Emphasis added).

In August 2007, defendant terminated plaintiff when another employee returned from military service.  The parties settled plaintiff's ensuing wrongful termination lawsuit (2007 lawsuit).  As part of that settlement, defendant reinstated plaintiff in July 2008, and agreed not to terminate him for one year.  Other than that year, plaintiff's employment with defendant had always been at-will.  When he returned to work, plaintiff was assigned to defendant's data management department, where he remained until his termination on May 26, 2015.  At the time of plaintiff's termination, Susan Shearer was his manager and Lourdes D'Amato-Cary was one of his supervisors.

In August 2009, plaintiff was involved in an automobile accident.  He did not receive treatment for his injuries until the following year, requiring a three-month absence from work, which was plaintiff's only extended medical leave during his employment with defendant.  Plaintiff was aware that, if he needed an accommodation, he "was responsible for notifying human resources of the need."  Regarding his diabetes, prior to 2007, plaintiff requested and received permission to eat "more frequent snacks" at his desk, and to advise Williams if

A-1411-17T3

he needed to take a break for a meal. Plaintiff never advised defendant that he needed an accommodation for his Crohn's disease.

Prior to terminating plaintiff in 2015, defendant twice notified him that other employees reported he was sleeping at work. The first meeting occurred in September 2014 with Shearer and Sandy Epstein, defendant's senior human resources executive. During that meeting, Shearer and Epstein told plaintiff that if defendant could help him in any way, plaintiff should inform them. Plaintiff indicated that his medication sometimes caused him to fall asleep. The record does not reveal that he specified the underlying medical condition. Shearer and Epstein told plaintiff "to make sure he did not look like he was sleeping at his desk in the future."

Epstein memorialized the meeting in an undated memo, which stated that "[m]ultiple employees" and managers were complaining about plaintiff's sleeping at work, and that it had become a "morale issue with the other employees." Although plaintiff received overall positive feedback in his 2014 annual performance review, he continued his habit of placing his head in his hand or sitting motionless with his hand on his computer mouse for approximately fifteen minutes at a time.

A-1411-17T3

On May 19, 2015, Sue Curley, defendant's director of government relations and public affairs, received two complaints from plaintiff's co-workers that he was sleeping at his desk. For example, Ryan Tamborini, a vice president, reported that he observed plaintiff "slouched at his desk and not moving. It became evidently clear that he ha[d] fallen asleep as his chin was to his chest, and his hand was resting on the desk, but not touching the [computer] mouse." Tamborini "also noticed that [plaintiff's] screen saver was on, which led [him] to believe that [plaintiff] had been [situated] like [that] for at least a few minutes." Shortly thereafter, Curley observed plaintiff and took a photo of him from behind depicting his head down and his hand on the mouse. At that time, however, the computer screen appeared to be active.[2]

Thereafter, Epstein memorialized plaintiff's ongoing sleep issue in an email to other members of management:

> In September, 2014, [Shearer] and I discussed [plaintiff's sleeping issue] with [him]. [Shearer] let him know that this was unacceptable. He indicated that he was on medication for a medical condition which sometime[s] caused him to fall asleep. [Shearer] told him that while we understood this, she advised him that

---

[2] Plaintiff testified at his deposition that he doubted he was depicted in the photograph. Nonetheless, because the photograph was taken from behind, the trial judge aptly determined it did not demonstrate that plaintiff was asleep. We agree, and also find that fact is not dispositive to our analysis.

this can[not] continue. She advised that if he was found sleeping again, it would result in a warning.

[Plaintiff]'s history with the company has been litigious. [Chief legal officer] Steve Davis is aware of his previous litigation which resulted in . . . [defendant's] reinstating him to a position here in Parsippany. I recommend that we gather any other information that Sue Curley has and have her or any witnesses provide information. We can then make a decision on what steps to take regarding his continued employment with the company.

On May 25, 2015, defendant's management decided to terminate plaintiff the following day. Mid-morning on May 26, 2015, plaintiff had a colitis attack that caused him to soil his pants, respond home to change his clothes, and return to work. Later that day, Curley observed plaintiff apparently asleep at his desk. Shearer and Epstein then met with plaintiff and terminated him. Following a prepared script, Shearer advised plaintiff, in pertinent part:

- [You] were caught sleeping at your desk again last week (Tuesday, May 19, 2015).
- You have been warned about this before.
- Therefore, we have no choice but to terminate your employment . . . effective immediately.

Thereafter, defendant reassigned plaintiff's work responsibilities to D'Amato-Cary. The record is devoid of any evidence that she received an increase in salary for those responsibilities. Nor does the record reflect D'Amato-Cary's age or whether she suffered from any disabilities.

6

During his deposition, plaintiff denied he ever fell asleep on the job, claiming he "took [a] rest or a nap during [his] break." When asked to distinguish between resting and sleeping, plaintiff stated, "Well maybe it should be described as dozing." Nonetheless, plaintiff acknowledged there were periods of time when seated at his desk, he would rest his head on his palm with his eyes closed, and that it was "possible" that someone observing him could perceive he was sleeping.

Although plaintiff testified that he did not recall whether Shearer or Epstein explained the ramifications of his sleeping on the job, he recalled that they told him not to look like he was sleeping at his desk. Nonetheless, plaintiff acknowledged defendant's rules of conduct, including offenses defendant "consider[ed] to be serious enough to result in immediate discipline, including termination for a single offense." Plaintiff further acknowledged that "sleeping on the job" was listed fourth on that list of offenses.

Following extensive oral argument and colloquy with counsel, the motion judge concluded there was no material issue of fact that precluded summary judgment. The judge elaborated:

> Plaintiff indicates that defendant was out to get him, [and his termination] was retaliatory because of his age and his disability. It [is] not supported by the facts at all. In fact, the contrary is true. When he was deposed,

7

> plaintiff indicated that he knew if he was sleeping he was going to be fired. He knew it meant his job.

On appeal, plaintiff contends he presented a prima facie discrimination action pursuant to New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Plaintiff further claims defendant's assumption that he was sleeping was not supported by reliable evidence, and was mere pretext. In essence, plaintiff argues the motion judge misapplied summary judgment standards because a jury reasonably could conclude defendant discriminated against him due to his age and disabilities. We disagree.

## II.

We review the grant of summary judgment de novo, applying the same legal standard as the motion judge. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Therefore, we "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); see also Brill, 142 N.J. at 540; R. 4:46-2(c).

"The practical effect of [Rule 4:46-2(c)] is that neither the motion court nor an appellate court can ignore the elements of the cause of action or the evidential standard governing the cause of action." Bhagat, 217 N.J. at 38. We

A-1411-17T3

owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Pertinent to this appeal, the LAD prohibits employers from discriminating against employees on the basis of age and disability, when making termination decisions. N.J.S.A. 10:5-12(a). The LAD does not, however, bar "the termination or change of the employment of any person who in the opinion of the employer, reasonably arrived at, is unable to perform adequately the duties of employment, nor to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards." N.J.S.A. 10:5-2.1. "Put another way, the LAD acknowledges the authority of employers to manage their own businesses." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005)

Because of the difficulty of proving that an employer was motivated by a discriminatory intent in making a personnel decision, New Jersey has adopted the burden-shifting analysis articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Zive, 182 N.J. at 447. In the context of a discharge case, a plaintiff must first demonstrate a

prima facie case of age or disability discrimination by proving: "(1) he was in the protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left."  Id. at 450 (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597 (1988)).

In this case, there is no dispute that plaintiff was a member of a protected class, otherwise was performing his job duties adequately, and was terminated. The dispute focuses on the fourth element of the prima facie test.  In evaluating the fourth prong, we are not persuaded by plaintiff's argument that Grande v. Saint Clare's Health System, 230 N.J. 1 (2017), marked "[a] trend toward de-emphasi[zing] the fourth prong" enunciated previously by the Court in Zive. Rather, in Grande, the only Zive factor in issue was the second prong.  Grande, 230 N.J. at 24.

If a plaintiff establishes a prima facie case, creating an inference of discrimination, the burden of production then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's action." Zive, 182 N.J. at 449 (citing Clowes, 109 N.J. at 596).  Where the defendant does so, "the burden of production shifts back to the employee to prove by a preponderance of the evidence that the reason articulated by the employer was

merely a pretext for discrimination and not the true reason for the employment decision."  Ibid.  "To prove pretext, a plaintiff may not simply show that the employer's reason was false but must also demonstrate that the employer was motivated by discriminatory intent."  Ibid. (citing Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002)).  At all times, however, the burden of proof that the employer engaged in intentional discrimination remains with the employee. Clowes, 109 N.J. at 596.

The employer is entitled to summary judgment if, after proffering a nondiscriminatory reason for its decision, plaintiff cannot "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Zive, 182 N.J. at 455-56.

Guided by these principles, we first consider plaintiff's age discrimination claim.  In Young v. Hobart West Group, 385 N.J. Super. 448, 459-60 (App. Div. 2005), we found the plaintiff failed to establish she was terminated due to her age, rather than as a cost reduction measure, where no one was hired to replace her.  Notably, however, we stated further that

> plaintiff cannot show either that she was replaced by someone sufficiently younger, or that "age in any

significant way made a difference" in the treatment she was accorded by her employer. Even had plaintiff established that her age was a primary factor in [defendants'] decision to terminate her, she has not refuted defendants' legitimate business reasons for discharging her.

[Id. at 460 (emphasis added).]

Reviewing the facts in this case in the light most favorable to plaintiff, we conclude he failed to meet his burden of demonstrating a prima facie case of age discrimination by showing he was replaced with a younger employee. It is undisputed that defendant did not hire, or seek to hire, a replacement. To the contrary, plaintiff's duties were assumed by his supervisor, D'Amato-Cary, an existing employee at the company.

Nor did plaintiff proffer facts sufficient to infer that "age in any significant way made a difference" to his termination. Ibid. At most, plaintiff claims his co-workers asked how long he worked at the company, implying he was old. Because the record is replete with evidence that plaintiff was perceived to be sleeping on the job, and had been warned previously against doing so, we find no basis for plaintiff's assumption.

We next consider plaintiff's disability claim. In particular, plaintiff testified at his deposition that he believed he was terminated because of his colitis attack that morning. Plaintiff's claim is purely speculative and belied by

his testimony: "Maybe somebody told [Epstein and Shearer] that I had gone out and come back. I don't know. Because I only know Patty at the front desk, so I don't know who could have said something." Plaintiff testified further that he had a good relationship with Patty and he had no reason to believe she would attempt to have him fired.

Moreover, it is undisputed that plaintiff did not request an accommodation for his Crohn's disease. See Raspa v. Office of Sheriff of Cty. of Gloucester, 191 N.J. 323, 339 (2007) (recognizing an employer has an obligation to attempt to reasonably accommodate an employee's physical or mental disability); N.J.A.C. 13:13-2.5. The employer's obligation is only triggered when the employer is made aware of the handicap and the employee requests an accommodation. Tynan v. Vicinage 13 of the Superior Court of N.J., 351 N.J. Super. 385, 400-01 (App. Div. 2002). The request need not be in writing and the employee is not required to utter the words "reasonable accommodation." Id. at 400. The employee must, however, "'make clear that . . . assistance [is desired] for his or her disability.'" Ibid. (alterations in original). Once the employee has conveyed the accommodation request to the employer, "'both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.'" Ibid.

For the sake of completeness, our de novo review of the record also supports defendant's claim that it articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment, and plaintiff failed to demonstrate defendant's reason for terminating his job was pretextual. The unrefuted evidence demonstrates defendant terminated plaintiff based on reports that he was sleeping at his desk. Sleeping on the job is not protected activity under the LAD.

We discern no evidence in the record to suggest plaintiff was fired because he was elderly or disabled. Rather, the reason defendant fired plaintiff was because it was undisputed that other employees reported he was sleeping at his desk, and not during breaks in the cafeteria as approved years earlier by Williams when she was his supervisor in another department. Whether or not plaintiff was sleeping, dozing, resting or napping, other employees perceived he was asleep on the job, and plaintiff acknowledged that perception was a possibility. His termination, therefore was based on legitimate business reasons, including defendant's need to assuage its employees' morale issues.

The judge evaluated the facts, assumed the veracity of plaintiff's assertions of discrimination, and viewed the record in a light most favorable to plaintiff. On that record, the judge concluded plaintiff was fired because he was sleeping.

14

As we previously noted, whether plaintiff was actually sleeping is not dispositive. Rather, plaintiff appeared to be sleeping at his desk with knowledge that his employer deemed even one occurrence of sleeping "serious enough to result in immediate discipline, including termination."

Based on our independent review of the record and applicable law, we are satisfied plaintiff failed to establish a prima facie case of age or disability discrimination under the LAD. Even if he did, defendant proffered a legitimate, nondiscriminatory reason for terminating plaintiff, which plaintiff failed to show was merely a pretext for discrimination. We therefore affirm the order granting defendant's motion for summary judgment dismissing the complaint with prejudice.

Plaintiff's remaining arguments, including his newly-minted retaliation claim,[3] lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] In his merits brief, plaintiff contends defendant terminated him in retaliation for his 2007 lawsuit, citing the trial court's questions during oral argument. However, plaintiff's complaint does not allege a retaliation claim. Further, the court's colloquy during a motion hearing does not constitute fact-finding nor conclusions of law. See Pardo v. Dominguez, 382 N.J. Super. 489, 492 (App. Div. 2006).

A-1411-17T3