**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4811-18

FILZAH KALIM,

     Plaintiff-Appellant,

v.

URBAN OUTFITTERS, INC.,
and ADRIENNE BATTAGLINO,

     Defendants-Respondents.

_____

> Submitted September 16, 2020 – Decided March 4, 2021
>
> Before Judges Geiger and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-2319-17.
>
> David H. Kaplan, attorney for appellant.
>
> Faegre Drinker Biddle & Reath, LLP, attorneys for respondents (Thomas J. Barton, on the brief).

PER CURIAM

     Plaintiff Filzah Kalim appeals from the trial court's June 6, 2019 order

granting summary judgment in favor of defendant Urban Outfitters, Inc.,

dismissing her complaint alleging wrongful termination, hostile work environment, and retaliation under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to - 49, as well as breach of implied contract. We affirm.

We discern the following facts from the record. Plaintiff was diagnosed with a hearing impairment as a young child and developed a speech impediment as a result. Defendant describes itself as a "lifestyle retailer" with locations throughout North America and Europe. In November 2014, plaintiff was hired by defendant at its Menlo Park location as a part-time seasonal sales associate. Although the position originally anticipated only a three-month period of employment, plaintiff was kept on as a permanent part-time employee following the holiday season.

It is undisputed that plaintiff received defendant's employee handbook when she was hired and electronically signed an acknowledgment indicating that she read it. The handbook included an employee code of conduct and outlined defendant's disciplinary procedures in the event of a violation. The handbook explained that in the event of a violation, defendant may exercise several corrective actions including verbal and written warnings, a final written warning, and termination. Directly next to the list of corrective actions is a provision stating that defendant may choose to take any of the previously

mentioned steps in any order, including termination, depending on the circumstances. The handbook also included a procedure for reporting complaints of discrimination.

Adrienne Battaglino began working as a store manager of the Menlo Park location around July 2015. Battaglino testified that although plaintiff's performance was generally satisfactory, she had to issue a number of verbal warnings based on plaintiff's conduct, which included drinking soda on the sales floor, failing to return from breaks on time, reading a book at closing time, violating the dress code, and sleeping in the break room.

Ashley Hill, a store supervisor at defendant's Menlo Park location, also described plaintiff's performance as generally satisfactory. She also testified, however, to several instances in which she also had to issue verbal warnings. Hill specifically noted two occasions on which she had to speak to plaintiff regarding her punctuality and confirmed the allegation that plaintiff read books while on duty. Defendant produced text messages evidencing a book reading incident from August 30, 2015, which was the only written documentation of plaintiff's violations prior to a September 8, 2015 final written warning.

Plaintiff's employment came to an end after a September 8, 2015 meeting with Battaglino and Hill. The meeting lasted forty-five minutes to an hour,

during which time plaintiff was presented with a document labeled "Written Warning Form." Two boxes appear at the top of the form marked "First Written Warning" and "Final Written Warning." The "Final Written Warning" box is checked. There are six columns near the center of the page listing a number of conduct violations. Seven violations are checked, including but not limited to "Violation of Dress code," "Failure to follow directions," and "Excessive lateness." The form includes a blank space directing a supervisor to describe "in detail examples of the employee's unsatisfactory conduct." Drinking on the sales floor, reading books, not listening to managers, tardiness, dress code violations, and over-length breaks are listed in handwriting. Directly below the handwritten list is another blank space directing a supervisor to explain the plan of action agreed upon by parties to correct the violations listed above. "If Filzah wants to continue working at Urban, she needs to have better communication with the store 2nd mgmt. team (aside from slack posts + texts). Follow policy and procedure correctly" is handwritten in the blank space. Directly below that is a box labeled "Potential consequences if behavior is not corrected:" with the word "TERMINATION" handwritten next to it. Battaglino, Hill, and plaintiff signed and dated the bottom of the document. Above the signature lines is a paragraph which states in part:

A-4811-18

> I acknowledge that I have reviewed this notice and received a copy of it. The above performance problem(s) has been discussed with me. I understand that either failure to improve my performance or the occurrence of other incidents of unsatisfactory behavior will result in further disciplinary action, up to and including termination . . . If I believe this corrective action to be unjustified or unfair, I can use the Company "Open Door" policy to address my concern.

Although plaintiff cannot remember most of what was said during the meeting, she contends Battaglino fired her as soon as she walked into the office, did not review the employee handbook or code of conduct with her, and asked if plaintiff would like to stay and work for the remainder of the shift. Plaintiff testified that she signed the document and was given a copy, but did not read it. Because plaintiff was upset after the meeting, she asked and was permitted to take a ten-minute break before returning to work. When plaintiff returned fifteen minutes later, she claims Battaglino told her to leave.

Battaglino, on the other hand, claims that although plaintiff was presented with a final written warning during the meeting noticing her of the consequences of continued conduct violations, she was not fired. According to Battaglino, she and Hill went over various rule infractions during the meeting and provided a copy of the employee handbook with relevant sections tabbed for plaintiff's review. Following the meeting, Battaglino also testified that she permitted

5

plaintiff to take a ten-minute break because she was upset, but stated plaintiff returned about an hour later, asked some questions about the meeting they had, then quit. Battaglino further testified that she has never fired an employee then permitted them to work for the remainder of the shift. It is undisputed that plaintiff's disability was not mentioned during the meeting.

About an hour after plaintiff left, plaintiff's sister returned to speak with Battaglino. Plaintiff's sister submitted a certification stating Battaglino informed her that she had fired plaintiff for drinking soda on the sales floor and taking overlength breaks. Battaglino submitted a certification stating she told plaintiff's sister she could not discuss employment matters with her.[1]

On April 10, 2017, plaintiff filed a complaint in the Superior Court of Middlesex County alleging Battaglino fired her for having a hearing impairment and fabricated performance issues to justify her termination. Naming both Urban Outfitters, Inc. and Battaglino as defendants,[2] plaintiff claimed wrongful

---

[1] In its motion for summary judgment, defendant explained that it made repeated attempts to serve plaintiff's sister with a subpoena so she could be deposed. It was unable to serve plaintiff's sister and alleged she was evading service.

[2] Battaglino was not served with the summons and complaint. Therefore, the trial judge issued a December 8, 2017 order dismissing plaintiff's claims against Battaglino, without prejudice, for lack of prosecution. After plaintiff filed her appeal of the trial court's June 6, 2019 order, we inquired as to the status of the claims

A-4811-18

termination, hostile work environment, and retaliation under the LAD, breach of implied contract, and requested punitive damages.

Plaintiff, Battaglino, and Hill were deposed. Plaintiff testified that she did not have any personal disagreements with Battaglino prior to the September 8, 2015 meeting. She further testified that she was never spoken to or treated inappropriately by Battaglino with regard to her disability, or any other issue. Plaintiff acknowledged she had not filed a complaint pursuant to the procedures described in defendant's handbook or pursued any other remedial action, apart from this lawsuit.

Both Battaglino and Hill were aware of plaintiff's disability, but each testified it played no role in the decision to issue the final written warning.

On April 12, 2019, defendant filed a motion for summary judgment arguing plaintiff had not established a prima facie case of employment discrimination based on her failure to produce any evidence of an adverse employment action or circumstances creating a legitimate inference of disability discrimination. Because plaintiff was not fired, she was not able to point to any

against Battaglino, prompting the parties to file a Stipulation of Dismissal Without Prejudice on September 26, 2019. Despite the arguments presented on appeal requesting damages from Battaglino, plaintiff has not moved to reinstate or otherwise made any effort to revive her claims against Battaglino.

adverse employment action as the basis of her claim. Defendant further argued, even if plaintiff was fired, it has provided unrebutted evidence of its nondiscriminatory reasons for termination, therefore the complaint should be dismissed.

On May 16, 2019, plaintiff filed a response, opposing summary judgment only on her wrongful termination claim. She argued that it could not be reasonably disputed that she was in fact terminated on September 8, 2015, and that the timing of Battaglino's transfer to defendant's Menlo Park location, and plaintiff's subsequent termination, created enough of a question of fact regarding defendant's discriminatory motive to present the case to a jury.

The trial judge found plaintiff did not establish a prima facie case of wrongful termination based on her failure to offer evidence that her disability played any role in the decision to fire her. The trial judge further found that even if she were able to establish a prima facie case, plaintiff had not produced any evidence to rebut defendant's articulated nondiscriminatory reason for termination. Ibid.

On appeal, plaintiff raises the following arguments for our consideration:

POINT I

THE TRIAL COURT ERRED IN MAKING FACTUAL DETERMINATIONS THAT SHOULD BE DECIDED BY A JURY.

POINT II

THE TRIAL COURT ERRED IN DECIDING THAT THERE IS NO PRIMA FACIE CASE OF DISABILITY DISCRIMINATION.

POINT III

THE COURT DID NOT ADEQUATELY ADDRESS THE QUESTION OF WHETHER OR NOT . . . DEFENDANT CAN ARTICULATE A L[E]GITIMATE NON-DISCRIMINATORY REASON FOR FIRING . . . PLAINTIFF AND IT IS ONE FOR THE JURY.

POINT IV

THE COURT FAILED TO ADEQUATELY STATE A REASON WHY A RATIONAL FACTFINDER COULD NOT CONCLUDE THAT THERE IS SUFFICIENT EVIDENCE TO SHOW THAT DEFENDANT'S EXPLANATION FOR TERMINATING THE PLAINTIFF WAS PRETEXT FOR DISCRIMINATION.

POINT V

THE EVIDENCE ESTABLISHES THAT DEFENDANT [BATTAGLINO] AIDED OR ABETTED THE DISCRIMINATORY CONDUCT; THEREFORE, SHE CAN BE HELD LIABLE UNDER

9

THE NEW JERSEY LAW AGAINST DISCRIMINATION.

We review a grant of summary judgment using the same standard that governs the trial judge's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); see also R. 4:46-2(c). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (quoting Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016)).

The LAD, N.J.S.A. 10:5-12, prohibits employment discrimination based on an employee's disability. In pertinent part, N.J.S.A. 10:5-12(a) provides as follows:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination . . . [f]or an employer, because of the . . . disability . . . of any individual . . . to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment[.]

"All LAD claims are evaluated in accordance with the United States Supreme Court's burden-shifting" methodology established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-04 (1973). Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 546 (2013). A plaintiff claiming disability discrimination must first present evidence establishing a prima facie case of the alleged discriminatory conduct. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005).

To successfully assert a prima facie claim of discriminatory discharge based on disability, a plaintiff must prove that (1) she was a member of protected group; (2) she was performing in the position from which she was fired; (3) she was terminated; and (4) the employer sought to replace her. Id. at 457-58 (citing Mogull v. CB Commercial Real Est. Grp., 162 N.J. 449, 471 (2000)).

11

Alternatively, to satisfy the fourth element, a plaintiff may show that her discharge "took place under circumstances that give rise to an inference of unlawful discrimination." Williams v. Pemberton Twp. Pub. Sch., 323 N.J. Super. 490, 502 (App. Div. 1999).

If a plaintiff establishes a prima facie case, creating an inference of discrimination, the burden of production then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the employer's action." Zive, 182 N.J. at 449 (citing Clowes v. Terminix Intern., Inc., 109 N.J. 575, 596 (1988)). Where the defendant does so, "the burden of production shifts back to the employee to prove by a preponderance of the evidence that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision." Ibid. "To prove pretext, a plaintiff may not simply show that the employer's reason was false but must also demonstrate that the employer was motivated by discriminatory intent." Ibid. (citing Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002)). At all times, however, the burden of persuasion that the employer engaged in intentional discrimination remains with the employee. Clowes, 109 N.J. at 596.

The employer is entitled to summary judgment if, after proffering a nondiscriminatory reason for its decision, plaintiff cannot "point to some

evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Zive, 182 N.J. at 455-56 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The first factor of plaintiff's prima facie case is undisputed because plaintiff's hearing disability places her in a class protected by the LAD. See N.J.S.A. 10:5-4.1. We are also satisfied that plaintiff was generally performing her job at a level that met her employer's expectations. Although the trial court found plaintiff quit on September 8, 2015, considering the summary judgment standard, we will assume for purposes of our de novo review that she was fired. As to the fourth requirement of a prima facie case, however, we conclude, as did the trial court, that plaintiff failed to come forward with any evidence showing she was replaced, or alternatively that raises, even circumstantially, an inference of unlawful discrimination.

In addition, even if we assume that plaintiff succeeded in establishing her prima facie case, the defendant articulated valid nondiscriminatory reasons for its actions. See Zive, 182 N.J. at 449 (citing Clowes, 109 N.J. at 596). Battaglino testified that in the months leading to the September 8, 2015 meeting,

she issued plaintiff several verbal warnings related to various conduct violations, which included drinking soda on the sales floor, violating the dress code, taking overlength paid breaks, sleeping in the break room, and reading a book instead of performing closing duties. Hill testified that she issued plaintiff verbal warnings on two occasions due to her tardiness. Hill also corroborated Battaglino 's verbal warnings regarding dress code violations, drinking soda on the sales floor, taking overlength paid breaks, and reading a book while others were closing the store. In plaintiff's own testimony, she admitted to arriving to work late, taking overlength paid breaks, and sleeping in the break room.

Having articulated its nondiscriminatory motive for termination, the burden of production shifts back to plaintiff to prove by a preponderance of the evidence that defendant's alleged reasons were merely pretext for its true discriminatory intent. Ibid. Plaintiff argues in light of her outstanding record under the previous manager, the timing of Battaglino's arrival at defendant's Menlo Park location in July 2015, coupled with her subsequent performance issues leading to dismissal on September 8, 2015, provide enough evidence for a reasonable jury to conclude she was fired on the basis of her disability. We disagree.

14

Plaintiff has failed to point to any evidence in the record that could plausibly lead to an inference of disability discrimination. Plaintiff testified that during the course of her employment, Battaglino never mentioned anything about her disability or treated her inappropriately in any way. In fact, the very first issue she had with her manager arose during the September 8, 2015 meeting, during which the issue of plaintiff's disability was not raised or discussed. In short, plaintiff has failed to present any evidence, direct or circumstantial, that her disability played a role in the discipline imposed. Under these facts, we conclude that no reasonable jury could conclude that defendant's complaints about her performance, many of which plaintiff admits, were a pretext for disability discrimination. We therefore affirm the trial court's summary judgment order.

The remainder of plaintiff's arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4811-18