**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1999-24

ALLEN GURDGIEL,

     Plaintiff-Appellant,

v.

COUNTY OF CAPE MAY
LIBRARY,

     Defendant-Respondent.

_____

Submitted March 11, 2026 – Decided June 18, 2026

Before Judges Currier and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0014-23.

Costello & Silverman, LLC, attorneys for appellant (Jacquelyn R. Matchett, of counsel and on the briefs; Miriam S. Edelstein, on the briefs).

Marshall Dennehey, PC, attorneys for respondent (Matthew J. Behr and Walter F. Kawalec, III, on the brief).

PER CURIAM

Plaintiff began working as a building maintenance and repairer for defendant County of Cape May Library in 2008. In 2021, after plaintiff began using a cane at work, defendant referred him for a fitness for duty examination. Unhappy with the evaluator's conclusion that plaintiff could not perform his job requirements, plaintiff requested an administrative hearing. The hearing officer found plaintiff's physical limitations were a risk to himself and others. Thereafter, defendant terminated plaintiff.

Plaintiff filed a complaint against defendant alleging multiple violations of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, including: disability discrimination; perception of disability discrimination; failure to accommodate; and retaliation. Plaintiff appeals from the court's March 7, 2025 order granting defendant summary judgment. We affirm.

I.

Plaintiff's job description required him to perform "simple and moderately physically strenuous tasks involved in cleaning and maintaining offices, furniture, buildings, and grounds." He was also expected to "assist in making minor repairs to buildings or equipment." Plaintiff testified that he operated as a "jack-of-all-trades." Plaintiff's duties included, but were not limited to, replacing ceiling tiles and light bulbs, painting small areas, assembling furniture,

A-1999-24

completing minor repairs, and performing preventative maintenance. Plaintiff testified that during his employment he often had to assemble and disassemble shelving and transfer boxes of books between branches.

In June 2021, plaintiff began using a cane at work when rising from a seated position. Plaintiff testified he had begun experiencing ongoing pain in his right knee approximately a year earlier. He began treatment with an orthopedic knee specialist, Kevin McHale, M.D., who diagnosed plaintiff "with a right knee meniscus tear and arthritis." Plaintiff stated he mainly experienced pain when applying pressure to the knee while standing up from a seated position, and the use of the cane alleviated that pressure.

After observing plaintiff using the cane, defendant's Human Resources Department (HR) requested a doctor's note regarding his ability to perform his work duties. In September 2021, a nurse practitioner associated with plaintiff's primary care doctor issued a note stating that "[plaintiff] ha[d] right knee problems and is under the care of Orthopaedic specialist. [Plaintiff] does not have any work restrictions at this time. Please allow him to use cane as needed."

Plaintiff and his union representatives met with HR. In that meeting, HR expressed concern that the note was contradictory, as it stated plaintiff had no work restrictions but should be allowed to use a cane as needed. HR requested

A-1999-24

further information about plaintiff's injury, limitations and recovery and requested he sign a HIPPAA authorization to obtain his medical records. Plaintiff told HR he did not intend to use the cane anymore at work. The nurse practitioner submitted a second medical note reiterating plaintiff could continue to work without restrictions.

After plaintiff saw Dr. McHale for treatment in October 2021, the doctor provided a note stating that plaintiff could work without restriction, but that he was to wear a hinge brace or use a cane to transition "from a sitting to standing position while at work when he has flare-ups and/or his knee is bothering him." The note prompted HR to request another meeting. At the ensuing meeting, HR advised plaintiff it was referring him for a "fitness for duty exam" and placed him on administrative leave with pay pending the exam results. Plaintiff asserts that during this meeting he requested defendant provide him with a standing desk and/or a tablet.

Tim Pinsky, D.O., MPH., performed the fitness for duty evaluation in October 2021. Dr. Pinsky noted plaintiff's job description required him to occasionally climb up ladders and at times move objects weighing about fifty pounds. Plaintiff informed Dr. Pinsky he had two cortisone shots in the knee in March and October 2021, administered by Dr. McHale. Dr. Pinsky reviewed

4

plaintiff's extensive job duty requirements as well as the MRI report and concluded that "[t]aking the three main components of fitness for duty into account:  Physical capacity, tolerance, and risks; these observations . . . demonstrate that [plaintiff] [was] not . . . fit for duty in the positions of [b]uilding [m]aintenance [w]orker and [m]aintenance [r]epairer for the [l]ibrary."  Dr. Pinsky stated that plaintiff "would not only have difficulty performing the full duty tasks of the positions listed but were he to do so [sic] would place both himself and others at significant and imminent risk of harm to health and safety of lasting duration."  Dr. Pinsky contacted Dr. McHale to discuss the alleged contradictory nurse practitioner notes, but ultimately they did not speak to each other before Dr. Pinsky issued his report.

Based on Dr. Pinsky's report, defendant issued a preliminary notice of discipline in December 2021, as it was determined that plaintiff was not fit for duty for his position.  Thereafter, Dr. McHale issued a letter stating he had "carefully reviewed the requirements of [plaintiff's] job" and determined

> him to be capable and healthy to perform . . . duties as [was] required under his job, WITHOUT ANY RESTRICTIONS.  This information [was] based on [Dr. McHale's] knowledge of him as an established patient and his most recent visit and [his] thorough assessment of the patient at [that] time.

A-1999-24

An administrative hearing was held in January 2022. Defendant's HR director provided background information regarding plaintiff's job description including working on scaffolding and using/moving heavy objects. Plaintiff attempted to introduce the most recent note from Dr. McHale, but after defendant objected to the note as hearsay since Dr. McHale was not testifying to its contents, the hearing officer concluded the note was hearsay and inadmissible. The hearing officer did review the nurse practitioner notes plaintiff had submitted to HR.

Dr. Pinsky testified consistent with his report and further determined there was "no medical device or other alternate supportive aid to assist [plaintiff] in doing his job."

The hearing officer found Dr. Pinsky's report credible, stating:

> Dr. Pinsky specifically notes in addition to using ladders and working on scaffolding that many of his other job tasks are more strenuous than simply getting up from a chair for which . . . [plaintiff] needs a cane. These include: stand/walk on his feet for protracted periods of time, climb ladders and equipment, bending, kneeling, lifting, carrying, pushing, pulling, move objects weighing about 50 pounds, mow lawns, trim hedges, rake and burn leaves and refuse, trim driveway and sidewalk edges using spades and hose, shovel snow, and spread sand or salt on icy surfaces to prevent slipping. These obviously put extra pressure on the knees further exposing his limited physical capacity; increasing the risk of injury to himself and others.

A-1999-24

The officer concluded plaintiff's "physical limitations and use of the cane support aid . . . ma[de] him a risk factor to himself and others." On February 14, 2022, defendant issued plaintiff a Final Notice of Disciplinary Action informing him that he had been terminated because he was not able to work in the capacity for which he was hired.

Following the administrative hearing, County counsel advised plaintiff he could have another doctor evaluate him and if the doctor concluded plaintiff could work without limitations, the County would comply with that opinion. Plaintiff did not accept the offer.

Thereafter, plaintiff filed a complaint against defendant alleging multiple violations of the LAD. Following the conclusion of discovery, defendant moved for summary judgment. The court granted the motion on March 7, 2025.

II.

On appeal, plaintiff contends the court erred in granting summary judgment because he presented a prima facie case of discrimination for an actual or perceived disability; defendant failed to provide reasonable accommodations to permit him to perform his job; there was sufficient evidence to support his retaliation claim and he was entitled to punitive damages and equitable remedies.

A-1999-24

We review a trial court's decision on a motion for summary judgment de novo, applying the same standard as used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Considering the evidence in the light most favorable to the nonmoving party, summary judgment is granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Allen v. Cape May Cnty., 246 N.J. 275, 288-89 (2021) (quoting R. 4:46-2(c)).

## A.

The LAD makes it unlawful

> [f]or an employer, because of the . . . disability . . . of any individual . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions, or privileges of employment.
>
> [N.J.S.A. 10:5-12(a).]

"All of the provisions of the [LAD] . . . shall be construed to prohibit any unlawful discrimination against any person . . . unless the nature and extent of

the disability reasonably precludes the performance of the particular employment." N.J.S.A. 10:5-4.1.

> When a plaintiff alleges [he] was fired discriminatorily based on a disability, [he] must prove by a preponderance of the evidence that: (1) [he] is disabled within the meaning of the LAD; (2) [he] "was performing [his] job at a level that met [his] employer's legitimate expectations"; (3) [he] was discharged; and (4) the employer sought someone else to perform the same work after [he] left.
>
> [Grande v. St. Clare's Health Sys., 230 N.J. 1, 17-18 (2017) (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 597 (1988)).]

The plaintiff bears the burden of proving the elements of a prima facie discrimination case. Victor v. State, 203 N.J. 383, 408 (2010). "The evidentiary burden at the prima facie stage is 'rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination could be a reason for the employer's action.'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (emphasis in original) (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)).

Once a plaintiff has met its burden of making a prima facie case, "the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Viscik v. Fowler Equip. Co., 173 N.J. 1, 14 (2002). "After the employer does so, the burden shifts

back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination." Ibid. To prove this, "plaintiff must do more than simply show that the employer's reason was false; he or she must also demonstrate that the employer was motivated by discriminatory intent." Ibid. Thus, "a plaintiff retains the ultimate burden of persuasion at all times; only the burden of production shifts." Ibid.

The trial court found that plaintiff "failed to present a prima facie case of disability discrimination under the LAD." Specifically, that plaintiff did not satisfy prongs two and four of the prima facie case.

The parties do not dispute plaintiff satisfied the first and third prongs of the LAD. We turn then to an analysis of the remaining elements. Under prong two, plaintiff must prove he was performing his job at a level that met his employer's legitimate expectation. Grande, 230 N.J. at 17-18.

In analyzing element two, the court found that plaintiff's "medial meniscus tear and arthritis in his right knee" disqualified him from performing the essential functions of the job. The court reasoned that "[n]o reasonable employer would want their employee who has used a cane during at least two periods of time, who has had trouble getting up from a chair, doing [the physical labor plaintiff's job required]."

A-1999-24

However, whether an employer wants an employee is not the substantive analysis. That reasoning is contrary to the policy behind the LAD. An employer who does not want an employee because they may be using an assistive device during the performance of their job duties may not freely terminate that employee for that reason unless the work falls below the employer's expectation. Here, there was no evidence plaintiff was not performing his job duties. Plaintiff testified he was performing all his job functions and only used the cane for a period of two weeks on occasion when he got up from a sitting position to avoid putting full weight on his right knee. Moreover, plaintiff presented several notes from Dr. McHale and his staff stating plaintiff could work full duty without any restrictions.

Defendant did not present any evidence to the contrary. It relied solely on Dr. Pinsky's report, which opined that plaintiff's medical condition would prevent him from doing all of his wide-ranging labor-intensive duties rather than observable evidence that plaintiff was not performing his duties to the level expected by defendant. Of course, there were only a few weeks between plaintiff first using the cane and the fitness for duty examination, which limited the amount of time defendant could assess plaintiff performing the various job tasks.

A-1999-24

The second prong of the prima facie case must be evaluated by an objective standard. Grande, 230 N.J. at 18. "Thus, deficiencies in an employee's performance are reserved for consideration at later stages in the analysis." Ibid. "[A]ll that is necessary is that the plaintiff produce evidence showing that [he] was actually performing the job prior to termination." Ibid. (quoting Zive, 182 N.J. at 454). We are satisfied plaintiff presented sufficient evidence to meet his burden as to prong two.

We turn to prong four under which plaintiff must establish "the employer sought someone else to perform the same work after [he] left." Ibid. Plaintiff did not present any evidence to support this prong. According to the assistant director of the library, the position had not been filled as of September 2022. However, we have previously stated that

> [i]n light of the various contexts in which employment discrimination claims arise, we consider it unwise to require a plaintiff to establish unfailingly as part of the prima facie case that plaintiff was replaced by an individual outside the plaintiff's protected class. The appropriate fourth element of a plaintiff's prima facie case requires a showing that the challenged employment decision (i.e., failure to hire, failure to promote, wrongful discharge) took place under circumstances that give rise to an inference of unlawful discrimination. That formulation permits a plaintiff to satisfy the fourth element in a variety of ways.

A-1999-24

> [Williams v. Pemberton Twp. Pub. Schs., 323 N.J. Super. 490, 502 (App. Div. 1999) (citations omitted).]

The trial court found "there [was] no evidence that [p]laintiff's termination occurred under circumstances giving rise to an inference of discrimination." The court noted that plaintiff's termination "was based on [defendant's] reliance on Dr. Pinsky's examination, his report, and his testimony at the administrative hearing."

It remained plaintiff's burden to present some evidence that discrimination could be a reason for defendant's action. Zive, 182 N.J. at 447. He has not done so. Plaintiff contends only that defendant did not meet its burden of proof regarding its action. However, it was not defendant's burden at this point. The burden of going forward only shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action after plaintiff has met their burden of demonstrating a prima facie case. See Viscik, 173 N.J. at 14.

The trial court did not err in finding there was not "any competent evidence that [p]laintiff's termination occurred under circumstances giving rise to an inference of discrimination."

Because plaintiff did not establish a prima facie case of discrimination under the LAD, the trial court properly granted summary judgment on that count.

13

B.

Plaintiff contends that the trial court erred in granting summary judgment on the LAD failure to accommodate count because defendant failed to identify existing accommodations which could permit plaintiff to perform his job.

Under N.J.A.C. 13:13-2.5(b), "[a]n employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business."  "To determine what appropriate accommodation is necessary, the employer must initiate an informal interactive process with the employee. . . .  Once a handicapped employee has requested assistance, it is the employer who must make the reasonable effort to determine the appropriate accommodation." Tynan v. Vicinage 13 of Superior Ct., 351 N.J. Super. 385, 400 (App. Div. 2002).

> To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate:  (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for [his] disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

A-1999-24

[Id. at 400-01.]

"An employer's duty to accommodate extends only so far as necessary to allow 'a disabled employee to perform the essential functions of his job. It does not require acquiescence to the employee's every demand.'" Id. at 397 (quoting Vande Zande v. State of Wis. Dep't of Admin., 851 F. Supp. 353, 362 (W.D. Wis. 1994), aff'd, 44 F.3d 538 (7th Cir. 1995)).

In granting defendant's motion for summary judgment on this claim, the trial court found that plaintiff's request for a standing desk or tablet "would do nothing to allow him to perform the essential functions of his job as a [b]uilding [m]aintenance [w]orker/[m]aintenance [r]epairer, such as using ladders, lifting and moving heavy boxes of books, and performing prolonged physical labor." We agree.

Plaintiff's request for an accommodation in the form of a standing desk or a tablet does not relate to the essential functions of his job. Plaintiff's duties included labor-intensive tasks, such as replacing ceiling tiles and light bulbs, moving books, furniture, and other library materials, painting, cleaning, and making general repairs. Plaintiff's request for a computer tablet and a standing desk would not affect his ability to perform these physical manual tasks.

A-1999-24

C.

We turn to plaintiff's action for retaliation under the LAD. Plaintiff argues that the trial court erred in concluding that "[p]laintiff's complaints were not protected activity under the LAD as well as in concluding that no causal link existed between the protected activity and the adverse employment action."

Before the trial court, plaintiff argued that he "engaged in protected conduct prior to the [administrative] hearing when he provided documentation related to his medical status and when he made a complaint regarding [d]efendant's decision to send him for an examination."

The court found it was not protected activity for "an employee [to] provide[] medical records to the employer when the employer has a reasonable concern regarding the employee's ability to perform essential job duties and to perform them safely. This is a normal and essential part of running a business." Nor was it protected activity to request a fitness for duty examination.

On appeal, plaintiff now asserts he engaged in protected activity when he: (1) "requested reasonable accommodations to use a standing desk and a tablet during the October 13, 2021 meeting with HR"; (2) "complained in that same meeting that he was being unfairly treated because of his medical condition"; and (3) "complained that he was being unfairly treated because of his medical

A-1999-24

condition at the [administrative] hearing."  These are new assertions that have not been considered by the trial court.

N.J.S.A. 10:5-12(d) makes it unlawful for an employer

> to take reprisals against any person because that person has opposed any practices or acts forbidden under [this act] or because that person has sought legal advice regarding rights under [this act], shared relevant information with legal counsel, shared information with a governmental entity, or filed a complaint, testified, or assisted in any proceeding under [this act] or to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [this act].

To support a claim of retaliation, a plaintiff must demonstrate that "the employee 'engaged in a protected activity known to the [employer,]' the employee was 'subjected to an adverse employment decision[,]' and there is a causal link between the [two elements]."  Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (first and second alterations in original).  If a prima face case is established, the claim is evaluated in accordance with the McDonnell Douglas[1] burden shifting framework.  Id. at 546-47.

_____

[1]  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

17

Our review reflects that plaintiff has not satisfied the causality prong of the retaliation analysis. The record does not demonstrate that defendant terminated plaintiff because he requested reasonable accommodations or complained of unfair treatment related to his medical condition. There is no evidence to support plaintiff's contention that these communications were the basis for his termination. Instead, the determination to terminate defendant resulted from Dr. Pinsky's report, which found plaintiff unfit to perform his job duties. As plaintiff is "unable to point to any facts to support [his] retaliatory claim except that [he] complained and was terminated," the trial court did not err in granting summary judgment on the retaliation claim. See Young v. Hobart W. Grp., 385 N.J. Super. 448, 466 (App. Div. 2005).

For the reasons stated, we see no reason to disturb the trial court's order granting defendant summary judgment on the substantive claims. Therefore, we need not address the remaining arguments as they are moot.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1999-24